OPINION OF THE COURT
Eileen Bransten, J.
Plaintiff MBIA Insurance Corporation (MBIA) moves pursuant to CPLR 3212 (e) for partial summary judgment against defendants Countrywide Home Loans, Inc. (CHL); Countrywide Securities Corporation (CSC), Countrywide Financial Corporation (CFC) and Countrywide Home Loans Servicing, LP (CHLS, and, with CHL, CSC and CFC, Countrywide) collectively and CHL separately.
MBIA seeks judgment first that on its claim for fraud against Countrywide, MBIA need establish only that Countrywide’s alleged misrepresentations induced MBIA to issue insurance policies on terms it would not have agreed to had MBIA known of the alleged misrepresentations, and that MBIA need not show a causal connection between Countrywide’s alleged misrepresentations and MBIA’s claims payments made pursuant to MBIA’s insurance policies.
Second, MBIA seeks judgment on its claim against CHL for breach of the insurance agreement. Specifically, MBIA wants the court to declare that MBIA need establish only that CHL’s alleged warranty breaches increased the risk of the insurance that MBIA provided, and that MBIA need not show a causal connection between CHL’s alleged warranty breaches and MBIA’s claims payments made pursuant to MBIA’s insurance policies. Third, MBIA seeks judgment on its claim for CHL’s breach of its alleged repurchase obligation under various transaction documents. Specifically, MBIA seeks judgment that it need establish only that a loan breached a representation or *898 warranty in a way that materially affects MBIA’s interests, and that MBIA need not show that the allegedly noncompliant loan was nonperforming or that the nonperformance was caused by Countrywide’s breaches of representations and warranties in respect of that loan.
MBIA further seeks, pursuant to CPLR 3211 (b), to strike Countrywide’s and Bank of America Corporation’s fourteenth and fifteenth affirmative defenses, wherein Countrywide asserts that it was not the cause of any alleged injury, loss or damages suffered by MBIA (fourteenth) and that MBIA’s claims are barred, in whole or in part, by superseding or intervening causes of any alleged damages, and that any damages MBIA did suffer resulted directly from causes other than Countrywide’s alleged acts or omissions.
Countrywide opposes.
Background
The facts of this matter have been discussed extensively in previous decisions of this court. Thus, only details necessary to this motion are referenced herein.
MBIA brought the instant action on September 30, 2008 against the Countrywide defendants. MBIA alleged, and alleges, that Countrywide fraudulently induced MBIA to insure securitizations and that Countiywide breached the representations and warranties in the transaction documents. On August 24, 2009, MBIA filed an amended complaint.
This action stems out of 15 residential mortgage-backed securitizations (the securitizations). Each securitization is comprised of a group of mortgage loans, originated or acquired by Countrywide. Countrywide sold or conveyed the mortgage loan securitizations to trusts. The trusts, in turn, issued notes and certificates backed by the loans to investors. The investors were promised a return of principal with interest. Payments of interest and principal depended on an ongoing stream of principal and interest payments on the mortgage loans held by the trusts.
The rights and obligations of the parties to the securitizations are set forth in contracts (the transaction documents). The transaction documents provide for the sale of the mortgage loans to the trusts (the purchase agreements); the servicing of the mortgage loans by CHL or CHLS (the sales and servicing agreement or SSA); and a pooling and servicing agreement (PSA) for closed-end second liens. Further, the trusts issued the securitizations through an indenture and sold the securitiza *899 tions pursuant to a prospectus and prospectus supplement. The transactions closed between September 2004 and May 2007.
MBIA, for premiums received, insured that payments to the securitizations’ investors would be made. For each securitization, MBIA issued a note or certificate guaranty insurance policy to the trusts that provided the terms for an MBIA-issued financial guaranty policy (insurance policy). Each insurance policy guarantees that should the payments received from the mortgage loans be insufficient to cover payments due under the securities, MBIA would pay the shortfall. The terms of each insurance policy were stated in an insurance agreement.
The insurance agreements contain and incorporate representations and warranties regarding the individual loans that comprise the securities. Countrywide asserts that the insurance agreements contain many of the provisions found in the other transaction documents. (Countrywide’s mem of law in opposition to plaintiffs motion for partial summary judgment and motion to strike defenses [Countrywide opposition mem] at 3.) MBIA asserts that the representations and warranties in the insurance agreements were comprehensive, and that it relied upon those representations and warranties when evaluating the risk associated with insuring the securitizations. (Plaintiffs mem of law in support of motion for partial summary judgment and motion to strike defenses [MBIA mem] at 5.)
MBIA states that the insurance agreements contain two types of representations and warranties, the “Transactional Warranties” and the “Loan-Level Warranties.” (MBIA mem at 6-7.)
MBIA states that the transactional warranties contain a representation about the accuracy of the information provided to MBIA by Countrywide. Specifically, the transactional warranties state that “[n] either the Transaction Documents nor other material information relating to the Mortgage Loans . . . contains any statement or a material fact by the Master Servicer, the Sponsor or Depositor which was untrue or misleading in any material respect when made.” (Sheth affirmation,[1] exhibit 6; insurance agreement for HELOC securitization, § 2.01 [j], exhibit 7; insurance agreement for CES securitization, § 2.01 [j].)
The loan-level warranties are alleged to contain a “comprehensive array of representations and warranties by Countrywide *900 about the characteristics of the underlying loan pools and of individual loans.” (MBIA mem at 6.) MBIA alleges that the representations and warranties consist of those made by Countrywide in other transaction documents {id., citing Sheth affirmation, exhibit 8; mortgage loan purchase agreement [MLPA], exhibit 9; sales and servicing agreement, exhibit 10; pooling and servicing agreement [which are incorporated into the insurance agreement]; Sheth affirmation, exhibit 6, § 2.01 [1], exhibit 2, § 2.01 [1]; see also exhibit 6, § 2.04 [j]; § 2.07 [g]).
Relevant to the pending motion, MBIA’s amended complaint asserts: (1) fraud against CFC, CHL and CSC; (2) breach of the express representations and warranties in the insurance agreement by CHL and CHLS; (3) breach of the obligation to repurchase noncompliant mortgage loans by CHL; and (4) breach of the loan servicing covenants in the SSAs and PSAs by CHL and CSC.
MBIA moves for summary judgment that it need not establish a causal connection between Countrywide’s alleged misrepresentations and MBIA’s claims payments made pursuant to MBIA’s issued insurance policies. MBIA also seeks judgment that MBIA’s claim against Countrywide for breach of the repurchase obligations does not require a showing that a non-compliant loan is actually in default or that CHL’s alleged misrepresentations were the actual cause of default of a particular loan.
Analysis
I. Standard of Law
CPLR 3212 (e) provides, in relevant part, that “summary judgment may be granted as to one or more causes of action, or part thereof, in favor of any one or more parties, to the extent warranted, on such terms as may be just.”
The standards for summary judgment are well settled. The movant must tender evidence, by proof in admissible form, to establish the cause of action “sufficiently to warrant the court as a matter of law in directing judgment.” (CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) “Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) Once such proof has been offered, to defeat summary judgment the opposing party must “show facts sufficient to require a trial of any issue of fact.” (CPLR 3212 [b]; Zuckerman, 49 NY2d at 562.) MBIA here moves on legal issues.
*901 CPLR 3211 (b) states that “[a] party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit.” When moving to dismiss an affirmative defense, the plaintiff bears the burden of demonstrating that the affirmative defense is without merit as a matter of law because it either does not apply under the factual circumstances of the case or fails to state a defense. (Bank of Am., N.A. v 414 Midland Ave. Assoc., LLC, 78 AD3d 746, 748 [2d Dept 2010].)
II. Arguments
A. MBIA’s Claims for Fraud and Breach of Warranty
MBIA contends that to succeed on an insurance fraud claim, the insurer must prove only that the application for insurance made a material misrepresentation that, had the insurer known of the true facts, would have led the insurer to either not issue the policy or issue the policy on different terms. MBIA also asserts that to succeed on a breach of warranty claim, the insurer must prove only that the breach of warranty materially increased the insurer’s risk. MBIA argues that it is not required to establish a causal link between Countrywide’s alleged misrepresentations and claims MBIA paid under the insurance policies. MBIA supports its argument with Insurance Law §§ 3105 and 3106, respectively.
Countrywide, in opposition, contends that MBIA must establish that the claims payments it made pursuant to its issued policies were caused by Countrywide’s alleged misrepresentations and not by another cause, including the economic downturn that began in late 2007. Countrywide further argues that Insurance Law § 3105 does not apply to MBIA’s common-law claim for fraud, and sections 3105 and 3106 do not provide for rescissory damages, the remedy which MBIA seeks.
B. Causation
The base issue before the court in this motion is when causation occurs in claims for insurance fraud and breach of representations and warranties. MBIA asserts that causation occurred, and liability resulted, when Countrywide made misrepresentations that were material and which induced MBIA to issue financial guaranty insurance policies when, had it known the true facts, it may have either declined to issue the policies or issued the policies on different terms. MBIA contends that it was denied the opportunity to examine the facts based on proper information, and, thus, all payments it has made pursuant to the policies resulted from Countrywide’s alleged misrepresentations.
*902 Countrywide argues that MBIA, having chosen to seek damages for all payments it has or will make pursuant to the insurance policies, must prove that its claims payments were directly and proximately caused by Countrywide’s alleged misrepresentations. Countrywide argues that Insurance Law §§ 3105 and 3106 do not provide for damages, but only that MBIA may avoid the insurance contracts should MBIA prove a material misrepresentation was made. Further, Countrywide contends that an insurance company may only invoke Insurance Law §§ 3105 and 3106 in a declaratory action or as an affirmative defense or counterclaim.
(i.) The First Department Decision of June 30, 2011
Countrywide asserts that this court and the First Department have both held that MBIA must prove that Countrywide’s alleged wrongdoing caused MBIA’s losses. This is correct; that wrongdoing causing loss must be proved before damages are levied has never been an issue for debate. It is further axiomatic that proximate cause is inherent in causation. “[T]here [must] be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.” (Prosser and Keeton, Torts § 41, at 263 [5th ed].)
However, the court disagrees with Countrywide’s characterization of this court’s holding and the Appellate Division’s June 30, 2011 decision with regard to causation. (See MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287 [1st Dept 2011].) The Appellate Division decision did not hold, as Countrywide argues, that this court must determine which of MBIA’s losses were caused by Countrywide’s alleged wrongdoing and which were caused by the “Mortgage Market Meltdown.” (Countrywide opposition mem at 7.) Rather, in the section that Countrywide quotes, the First Department rejected Countrywide’s contention that MBIA’s fraud claim must be dismissed for failure to plead a causal link between Countrywide’s alleged misrepresentations and MBIA’s alleged damages. The First Department held that MBIA’s pleading sufficiently alleged loss causation to avoid Countrywide’s motion to dismiss, as “it was foreseeable that MBIA would suffer losses as a result of relying on Countrywide’s alleged misrepresentations about the mortgage loans.” (MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d at 296.) The First Department further held that “[i]t cannot be said, on this pre-answer motion to dismiss, that MBIA’s losses were caused, as a matter of law, by the 2007 housing and credit crisis.” (Id.) The appellate court did not hold *903 that MBIA’s claims payments must be directly shown to be caused by Countrywide’s alleged misrepresentations. Countrywide’s quotation of the First Department’s parenthetical explanation to In re Countrywide Fin. Corp. Sec. Litig. (588 F Supp 2d 1132, 1174 [CD Cal 2008]) does not lend support to its argument. (See Countrywide opposition mem at 7.)
Countrywide’s reliance upon this court’s April 27, 2010[2] decision and order is similarly unavailing. (See Countrywide opposition mem at 7.) Therein, in response to Countrywide’s arguments, this court merely stated that it was premature on a motion based on pleadings to determine “whether an economic downturn constituted an intervening cause in the link between Countrywide’s alleged conduct and MBIA[’s]” alleged injury. (Decision and order of Apr. 27, 2010.) The court did not state that it must make such a determination in the future.
Neither the First Department nor this court addressed the determination of causation, and therefore no decision exists thereon that must be the law of the case. (Baldasano v Bank of N.Y., 199 AD2d 184, 185 [1st Dept 1993].)
(ii.) Insurance Law §§ 3105 and 3106
MBIA asserts its claims as informed by Insurance Law §§ 3105 and 3106. Insurance Law § 3105, titled “Representations by the insured,” states, in pertinent part:
“(a) A representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.
“(b) (1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.”
Section 3106, titled “Warranty defined; effect of breach,” states, again in pertinent part:
“(a) In this section ‘warranty’ means any provision *904 of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer’s liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract. The term ‘occurrence of loss, damage, or injury’ includes the occurrence of death, disability, injury, or any other contingency insured against, and the term ‘risk’ includes both physical and moral hazards.
“(b) A breach of warranty shall not avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract. If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, a breach of warranty shall not avoid such contract or defeat recovery thereunder with respect to any kind or kinds of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty.”
MBIA bases its claims on New York common law as informed and influenced by these sections.
(iii.) MBIA’s Assertions Based on Insurance Law §§ 3105 and 3106
Countrywide asserts that Insurance Law §§ 3105 and 3106 may be asserted only in a declaratory judgment action or as an affirmative defense. While Countrywide cites cases which illustrate a party seeking declaratory judgment to void a policy (Sun Ins. Co. of N.Y. v Hercules Sec. Unlimited, 195 AD2d 24, 27 [2d Dept 1993]), and a party seeking to void a policy for breach of condition precedent as a defense (Glickman v New York Life Ins. Co., 291 NY 45, 49 [1943]), these cases do not hold that avoidance and rescission may only be asserted in these manners. Countrywide has made no showing that MBIA may only use sections 3105 and 3106 in a request for declaratory judgment or as an affirmative defense and New York insurance statutes make no such statement.
(iv.) MBIA’s Claims against Countrywide Versus the Trusts
Countrywide next asserts that MBIA’s failure to name the trusts as defendants is fatal to its claims under sections 3105 *905 and 3106. Countrywide contends that the trusts are the actual insureds under the insurance policies, and that this court will “assume the role of the legislature” should it hold that the sections “authorize an insurer to sue an entity other than its insured to recover damages.” (Countrywide opposition mem at 10-11.)
The issue of recovery of damages is addressed below. However, it is clear from the very language of Insurance Law § 3105 that the section applies to statements made “by, or by the authority of, the applicant for insurance or the prospective insured . . . .” (Insurance Law § 3105 [a].) The statute speaks in the disjunctive between “applicant for insurance” or “prospective insured” and therefore clearly differentiates between the two. The court reads the statute as applying to statements made “by . . . the applicant.”
New York common law has correspondingly held that a broker for insurance may be held responsible for damages caused by misrepresentations. (See e.g. Panepinto v Allstate Ins. Co., 108 Misc 2d 1079, 1081 [Sup Ct, Monroe County, Mar. 20, 1981], citing 1 Harnett, Responsibilities of Insurance Agents and Brokers, § 4.03 [1]; § 4.08; Liberty Mut. Ins. Co. v Grand Transp., Inc., 2007 WL 764542, *3, 2007 US Dist LEXIS 17112, *9-10 [ED NY, Mar. 12, 2007].) MBIA thus prevails against this portion of Countrywide’s arguments. The Countrywide entities are proper defendants for alleged misrepresentations made.
(v.) Causation
MBIA posits common-law claims for fraud and breach of warranty. The court finds that in this insurance context, with MBIA as an insurance company and Countrywide as an applicant for insurance (see § II. B. iv., supra), the claims are informed by New York common law and Insurance Law §§ 3105 and 3106.
Both New York common law and the Insurance Law are clear that a material misrepresentation made at the time an insurance policy is being procured may lead to a policy being rescinded and/or avoided. (See BW Sportswear, Inc. v Those Certain Underwriters at Lloyd’s of London, Subscribing to Certificate No. 34665, 32 Misc 3d 1245[A], 2011 NY Slip Op 51707[U], *2 [Sup Ct, NY County 2011, Oing, J.], citing Kiss Constr. NY, Inc. v Rutgers Cas. Ins. Co., 61 AD3d 412 [1st Dept 2009]; Insurance Law § 3105.) This corresponds to a standard claim for fraud, in which fraud is complete when a misrepresentation is made that induces a party to take action and that *906 party suffers damages as a result. (See e.g. Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009].) The court therefore finds that no basis in law exists to mandate that MBIA establish a direct causal link between the misrepresentations allegedly made by Countrywide and claims made under the policy.
In order to prove its claims for fraud and breach of warranty, MBIA must prove all elements of its claims. (Small v Lorillard Tobacco Co., 94 NY2d 43, 57 [1999] [fraud]; Ainger v Michigan Gen. Corp., 476 F Supp 1209, 1223-1224 [SD NY 1979] [discussing breach of warranty].) Of particular importance here, MBIA must prove that Countrywide made misrepresentations that were material to its decisions to issue the insurance policies. In order to show materiality, as defined by Insurance Law § 3105 (b) and case law, MBIA must show that it relied on Countrywide’s alleged misrepresentations in that the alleged statements induced MBIA to take action which MBIA might otherwise not have taken, or would have taken in a different manner. (See Geer v Union Mut. Life Ins. Co., 273 NY 261, 269 [1937]; Interested Underwriters at Lloyd’s v H.D.I. III Assoc., 213 AD2d 246, 247 [1st Dept 1995].) “For purposes of determining materiality, there need not be a causal connection between the misrepresented condition and the loss suffered.” (Mutual Benefit Life Ins. Co. v Snyder, 1989 WL 16610, *3, 1989 US Dist LEXIS 1659, *8 [SD NY 1989], citing Greene v United Mut. Life Ins. Co., 38 Misc 2d 728, 730-731 [Sup Ct, Bronx County 1963], affd 23 AD2d 720 [1st Dept 1965].)
MBIA must prove for its fraud claim that it issued the insurance policies on representations made in the policies’ applications, and that it would not have done so or would have issued the policies on different terms had the alleged misrepresentations not been made. Similarly, MBIA must prove for its breach of warranty claim that Countrywide’s alleged misrepresentations materially increased MBLA’s risk of loss. (See Star City Sportswear v Yasuda Fire & Mar. Ins. Co. of Am., 1 AD3d 58, 62 [1st Dept 2003]; Insurance Law § 3106 [b].)
MBIA must then prove that it was damaged as a direct result of the material misrepresentations. As has been aptly pointed out by Countrywide, this will not be an easy task. Upon reaching its burden of proof for each claim, MBIA must then prove the amount of its damages.
The question therefore becomes whether MBIA’s claim for rescissory damages is valid in this instance, or if, having chosen to *907 inform its claims as per the Insurance Law, MBIA is limited to rescission.
(vi.) Rescission Versus Rescissory Damages
Countrywide asserts that under Insurance Law §§ 3105 and 3106, MBIA may only seek to rescind or avoid the insurance policies. MBIA contends that to void or rescind the insurance policies would be unfair to the trusts, and is prohibited by binding contract. Thus, MBIA moves for recognition that it may recover its alleged economic injury through rescissory damages.
Though traditionally directed toward breach of contract and tort, elementary damages theory is instructive to the case at bar.
Compensatory damages are intended to make the victim of wrongdoing whole. The damages are to place the wronged victim in the same position as it was in prior to the wrongdoing, without providing the recovery of any windfall. (Ross v Louise Wise Servs., Inc., 8 NY3d 478, 489 [2007]; New York City Economic Dev. Corp. v T.C. Foods Import & Export Co., Inc., 11 Misc 3d 1087[A], 2006 NY Slip Op 50754[U], *3 [Sup Ct, Queens County 2006, Weiss, J.]; see Haig, Commercial Litigation in New York State Courts § 46:2 [4 West’s NY Prac Series 3d ed] [“Whether arising from a breach of contract or a tort, compensatory damages are intended to compensate the injured party for its losses caused by the breach or tortious conduct. Compensatory damages ‘proceed from a sense of natural justice’ to repair the losses caused to one by the wrong of another”].)
Rescissory damages, while not often used in New York, are far from an unknown form of relief. While rescission will bring the parties back to base point prior to contract formation, and, in effect, “unmake” the contract, as the Delaware Chancery Court stated in 2003: “Rescissory damages are designed to be the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable. A solid body of case law so holds.” (Gotham Partners, L.P. v Hallwood Realty Partners, L.P., 855 A2d 1059, 1072 [Del Ch 2003], string citing, inter alia, Cinerama, Inc. v Technicolor, Inc., 663 A2d 1134, 1144 [Del Ch 1994]; see also Telstra Corp., Ltd. v Dynegy, Inc., 2003 WL 1016984, *8, 2003 Del Ch LEXIS 18 [Del Ch 2003] [holding against granting rescissory damages, but stating that “(a)t equity, rescissory damages should only be awarded where the ‘equitable remedy of rescission is impractical’ but otherwise warranted” (citation omitted)].)
*908 Here, rescission may be warranted should MBIA prove its claims, but it is impractical. First, to rescind the insurance policies would be to harm the policies’ beneficiaries, the noteholders, and may lead to greater economic harm. Second, rescission is further impractical, if not impossible, under the governing transaction documents. (See Sheth affirmation, exhibit 4, at 1, exhibit 5 at 1 [insurance policies providing that MBIA “unconditionally and irrevocably guarantees” payments under the policies].) Based upon the impracticability of rescission, and the fact that rescissory damages are the financial equivalent of rescission (see e.g. St. Clair Shores Gen. Empls. Retirement Sys. v Eibeler, 745 F Supp 2d 303, 315 [SD NY 2010]; Outdoor Life Network, LLC v EMTA Corp., 2006 WL 3834287, *5, 2006 US Dist LEXIS 94181, *17-18 [D Ariz 2006]; In re MAXXAM, Inc., 659 A2d 760, 775 n 15 [Del Ch 1995]), the court holds that rescissory damages are appropriate in this instance under persuasive case law and this court’s power to award relief. (See CPLR 3017 [a] and case law supra.)
MBIA seeks rescissory damages in the amount that it has been required to pay pursuant to the insurance policies, less premiums MBIA received under the policies. The court notes that, should MBIA prove its case, rescissory damages minus premiums received will make MBIA whole without providing a windfall. Rescissory damages, if found warranted, will thus serve the goal of damages theory and justification. (See also Equitable Life Assur. Socy. v Kushman, 276 NY 178, 184 [1937] [“Damages may be recovered as incident to an action in equity for a rescission”].)
MBIA has, relevant to this motion, made claims for fraud and breach of warranty. MBIA bases both claims upon alleged misrepresentations made by Countrywide that purportedly caused MBIA to enter into the insurance policies and were in violation of stated representations and warranties. It is without basis in case law to require MBIA to provide a causal link between the alleged misrepresentations and payments made pursuant to the policies. The elements of the claims are well established and make no such holding; it is well-settled that it is upon the misrepresentation that induces action resulting in damages that fraud or breach occurs. (See supra.) Further, the court finds that rescissory damages may make MBIA whole for any wrongdoing which it is able to prove. The court therefore grants MBIA’s motion for summary judgment. However, the court does not find that this disposes of Countrywide’s four *909 teenth and fifteenth affirmative defenses. The burden of proof remains upon MBIA to prove all elements of its causes of action. Defendants’ fourteenth and fifteenth affirmative defenses are not dismissed.
C. MBIA’s Claims for Breach of the Repurchase Obligation
MBIA also moves for summary judgment that its claim for breach of the repurchase obligation is not limited to nonperforming loans and does not require MBIA to demonstrate that CHL’s alleged breach of representations and warranties caused the nonperformance of loans.
MBIA supports its argument by first pointing to the HELOC Series 2006-E Sales and Servicing Agreement (SSA) § 2.04 (d), which states, in relevant part as quoted and relied upon by MBIA, that
“[t]he cure for any breach of a representation and warranty relating to the characteristics of the Mortgage Loans in the related Loan Group in the aggregate shall be a repurchase of or substitution for only the Mortgage Loans necessary to cause the characteristics to comply with the related representation or warranty.” (Sheth affirmation, exhibit 9; SSA § 2.04 [dj.)
MBIA contends that, had the parties intended that repurchase only be required if a mortgage loan was in default, the parties would have put that requirement in this portion of the contract. (MBIA mem at 22.)
MBIA further relies on section 2.10 of the same SSA in support of its argument. Section 2.10 directly refers to mortgage loans which are not in default or in danger of imminent default, stating, in pertinent part, that
“[notwithstanding any contrary provision of this Agreement, with respect to any Mortgage Loan that is not . in default or as to which default is not imminent, no repurchase or substitution pursuant to Section 2.02, 2.03, 2.04, or 2.06 shall be made unless the party repurchasing or substituting delivers to the Indenture Trustee an Opinion of Counsel to the effect that the repurchase or substitution would not result in [tax implications].” (Sheth affirmation, exhibit 9; SSA § 2.10.)
MBIA argues that section 2.10 provides that a loan need not be in default to be repurchased, but only that an opinion be provided as to tax implications of the repurchase or substitution *910 of the loan. Based upon this provision, MBIA states that if a loan not be in default for repurchase or substitution, but only that a tax opinion be provided, then MBIA need not demonstrate causation with respect to a default. (MBIA mem at 23; tr of Oct. 5, 2011, at 33.)
MBIA concludes its argument by stating that Countrywide’s alleged misrepresentations regarding loans underlying the securitizations breached Countrywide’s repurchase obligations as of the time of the misrepresentations, and the contract language is clear that Countrywide must repurchase all misrepresented loans. Finally, MBIA argues that its interest in the mortgage loans is materially and adversely affected by Countrywide’s misrepresentations upon which MBIA relied in its decision to insure the securitizations.
Countrywide asserts that the plain language of the transaction documents controvert MBIA’s argument, and that MBIA has merely selectively quoted from a provision found only in the HELOC contracts.
Countrywide counters MBIA’s argument based upon section 2.04 (d) of the HELOC Series 2006-E Sales and Servicing Agreement by noting that MBIA’s quoted language applies to breaches “in the related Loan Group in the aggregate,” and not individually. Countrywide contends that repurchase or substitution of loans is necessary under section 2.04 (d) only to the extent “necessary to cause the characteristics [of the mortgage loans in the aggregate] to comply with the related representation or warranty.” (Countrywide opposition mem at 19; Sheth affirmation, exhibit 9; SSA § 2.04 [d].) Countrywide argues that section 2.04 (d) thus does not apply to individual loans, but only that, should loans be found to be in breach of a representation or warranty, then loans may be substituted or repurchased to fix the representations of the loan group as a whole. (Countrywide opposition mem at 19.) Countrywide next contends that nothing in section 2.10 of the SSA counters its argument, below, that a breach must have material and adverse effect before the breaching loan is subject to repurchase or substitution.
Countrywide further argues that no repurchase obligation exists under the governing documents unless a misrepresentation and/or breach of warranty materially and adversely affects the interests of the insured or MBIA. Countrywide notes that the pooling and servicing agreement (PSA) for the CES securitization states, at section 2.03 (f), that
“[u]pon discovery by any of the parties hereto of a *911 breach of a representation or warranty set forth in Section 2.03 (a) through (e) that materially and adversely affects the interests of the Certificateholders or the Certificate Insurer in any Mortgage Loan then the party discovering the breach is to provide notice and the loan will be repurchased.” (Holland affirmation,[3] exhibit 6; PSA § 2.03 [f] [emphasis added].)
Countrywide asserts that as per this provision, notice of a breach of representation or warranty is only required for breaches that materially and adversely affect certificateholders or MBIA and that Countrywide need only cure breaches that materially and adversely affect certificateholders or MBIA. Countrywide further asserts that it need only cure breaches in all “material respects” and that only if a breach is not cured does a repurchase obligation arise. (Countrywide opposition mem at 16-17.)
Countrywide also argues that the HELOC trusts’ breach and repurchase provisions are similarly controlled by the phrase “materially and adversely affects.” Countrywide alleges that under the HELOC SSA, notice of a breach of representations and warranties is required upon discovery if that breach “materially and adversely affects the interests of the Trust, the Indenture Trustee under the Indenture, the Noteholders, or the Credit Enhancer in the Mortgage Loan.” (Holland affirmation, exhibit 5, 2006-E SSA § 2.04 [c].)
MBIA asserts in reply that the language of the HELOC Series 2006-E SSA makes clear that MBIA’s “interest” in the loans it insured was affected upon Countrywide’s misrepresentations regarding the loans. MBIA states that these misrepresentations directly led to a material and adverse effect on MBIA’s risk in insuring the securitization. MBIA further argues that, contrary to Countrywide’s contention, it does rely upon the phrase “materially and adversely affects” in the transaction documents, and the parties only differ as to that phrase’s effect. (MBIA reply mem at 13-14, citing MBIA mem at 22.)
MBIA contends that its interest in the loans may be affected prior to the loans’ nonperformance if MBIA’s risk of loss materially increased as a result of Countrywide’s misrepresentations. (Id.) MBIA also argues that the HELOC SSA provides a concrete *912 basis for repurchase remedy for loans that were misrepresented but may not yet be in default.
It is well established that a written agreement which is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. This court is obliged to interpret such a contract so as to give meaning to all of its terms. (See Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave., 1 AD3d 65, 69 [1st Dept 2003].)
Under New York law, upon motion for summary judgment based on contract, summary judgment is only appropriate where the language of the contract is unambiguous and reasonable minds could not differ as to its meaning. (Cf. State of New York v Peerless Ins. Co., 108 AD2d 385, 390 [1st Dept 1985].) If the contract is reasonably susceptible of more than one interpretation, summary judgment is inappropriate. (NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 58 [1st Dept 2008].)
The court finds that summary judgment is not here appropriate. While MBIA has posited a strong argument, its contention is wholly based upon the revolving home equity loan asset backed notes, Series 2006-E, and that securitization’s sales and servicing agreement. MBIA’s rule 19-a statement of material facts (Rules of Practice for Commercial Division of Supreme Court [22 NYCRR 202.70 (g)]) states that this SSA is “applicable to several of the HELOC Securitizations . . . .” (MBIA’s rule 19-a statement, statement 19.) It is not sufficient to overcome all issues of contract interpretation to state that the “MLPA [is] applicable to all of the HELOC Securitizations, and the PSA, which governs the CES Securitizations, similarly grants a repurchase remedy to MBIA” as per section 2.04 (d) of the SSA. (MBIA’s rule 19-a statement, statements 19, 20; Sheth affirmation, exhibit 9.) MBIA’s argument based upon the SSA is insufficient to be extrapolated to all of the securitizations.
Finally, this court finds that the applicable provisions of the SSA and the PSA are subject to varying interpretations regarding “interest” and effect on interest, as well as varying and equally valid interpretations of how the “aggregate” in SSA § 2.04 (d) must be defined. The issue is. therefore unripe for summary judgment. (NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d at 58.)
MBIA’s motion for summary judgment that its claim for breach of the repurchase obligation is not limited to nonperforming loans and that MBIA is not required to show that CHL’s *913 breach of the representations and warranties in the transaction documents caused the nonperformance of the loan is denied. The court notes that it does not hold, by implication, that MBIA must show that a breach of a representation or warranty caused a loan’s nonperformance, or that Countrywide is not contractually obligated to repurchase misrepresented loans. The holding is limited solely to MBIA’s burden of proof on its motion for summary judgment.
Order
Accordingly, it is hereby ordered that MBIA Insurance Corporation’s motion for partial summary judgment is granted to the extent that MBIA must establish for its claim of fraud that misrepresentations by the defendant(s) induced MBIA to issue insurance policies on terms to which it otherwise would not have agreed and that MBIA is not required to establish a direct causal link between defendant(s) misrepresentations and MBIA’s claims payments made pursuant to the insurance policies at issue; and it is further ordered that MBIA Insurance Corporation’s motion for partial summary judgment is granted to the extent that MBIA must establish for its claim for breach of the insurance agreement against Countrywide Home Loans, Inc. that CHL’s breach of warranties in the issued insurance policies’ transaction documents increased the risk profile of the issued insurance policies and MBIA is not required to establish a direct causal connection between proven warranty breaches by CHL and MBIA’s claims payments made pursuant to the insurance policies at issue; and it is further ordered that MBIA Insurance Corporation’s motion for partial summary judgment is granted to the extent that MBIA Insurance Corporation may seek rescissory damages upon proving all elements of its claims for fraud and breach of representation and/or warranty; and it is further ordered that MBIA Insurance Corporation’s motion for partial summary judgment is otherwise denied.

. Affirmation of Manisha M. Sheth in support of motion for partial summary judgment and motion to strike defenses (Sheth affirmation).

. Incorrectly dated as April 27, 2009.

. Affirmation of Mark Holland in support of Countrywide’s opposition to plaintiffs motion for partial summary judgment and motion to strike defenses.