STATE OF NEW YORK, Appellant, v PEERLESS INSURANCE COM-
PANY, Respondent.

First Department, May 21, 1985

### APPEARANCES OF COUNSEL

*August L. Fietkau* of counsel (*Richard G. Liskov* with him on
the brief; *Robert Abrams, Attorney-General,* attorney), for appel-
lant.

*Robert Nizewitz* of counsel (*Gottesman, Wolgel, Smith & Sec-
unda, P. C.,* attorneys), for respondent.

### OPINION OF THE COURT

Ross, J.

The State of New York (State) is appealing from a denial of its
motion for summary judgment in the instant action, which
concerns the State's right to recover under credit and perfor-
mance bonds, issued by the defendant Peerless Insurance Com-
pany.

New York taxes the retail sale of cigarettes, and each package
of cigarettes is required to bear a tax stamp (*see,* Tax Law § 473).
The Cigarette Tax Bureau (Bureau), formerly known as the

Special Investigations Bureau, is part of the New York State Department of Taxation and Finance, and it is the governmental agency charged with the responsibility of collecting and processing of cigarette taxes.

Pursuant to Tax Law § 472, the State collects this tax from the wholesaler, prior to the sale of the package of cigarettes to the retail purchaser. However, Tax Law § 471 (2) states, in pertinent part, that: "[i]t is intended that the ultimate incidence of and liability for the tax shall be upon the consumer".

In order to implement this method of tax collection, the State appoints the wholesale dealers as agents. The duties of these agents include, but are not limited to, the purchasing and affixing of adhesive and meter tax stamps to the cigarette packages. For doing this work, these agents are paid a commission. The actual purchase of the subject stamps takes place at banks, who have contracted with the State to provide this service. After a designated bank sells stamps to an agent, it then remits the proceeds, less the agent's commission, to the State.

With the consent of the State, an agent may, instead of paying cash, purchase such stamps on credit. Tax Law § 472 sets forth the manner in which credit may be extended. In pertinent part, this section states: "The tax commission may in its discretion *permit an agent to pay for such stamps within thirty days after the date of purchase and may require any such agent to file with the department of taxation and finance a bond issued by a surety company approved by the superintendent of insurance * * ** in such amount as the tax commission may fix to secure the payment of any sums due from such agent" (emphasis added).

In June 1958, Parkchester Tobacco & Candy Co. (Parkchester) of Mount Vernon, New York, made an application to the State, pursuant to Tax Law article 20 to be licensed as a wholesaler dealer for cigarettes. Examination of that application indicates, in pertinent part, that Parkchester was then a partnership, which had been formed several months before it made application, and that, at the time of that application, Parkchester was already purchasing a million packages of cigarettes a month. Subsequently, the State approved Parkchester's application, and it became a duly approved State agent. Thereafter, in accordance with the provisions of section 472, set forth *supra,* the State authorized Parkchester to purchase stamps on credit, subject to its obtaining credit and performance bonds.

Defendant carrier is a New Hampshire corporation, which has been licensed to engage in the insurance business in this State,

and two of the lines of insurance that it deals in are credit and performance bonds.

It is undisputed that Parkchester obtained these necessary bonds from defendant.

The credit bond bears identification number 62 14 33, and the title: "Form of Credit Bond for Agent to Affix Cigarette Stamps." Originally obtained in July 1974 in the amount of $50,000, the subject bond names Parkchester as principal and the State as the obligee under the bond. In this bond the defendant's obligation to the State, in pertinent part, appears as follows:

"THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall pay the New York State Tax Commission, its fiscal agent, or any fiscal sub-agents all sums due for all such stamps purchased by said Principal, including penalties and interest, within thirty (30) days after the date of the purchase thereof, then this obligation to be void, otherwise to remain in full force and effect, subject, however, to the following conditions:

"1. The aggregate liability of the Surety on account of all defaults in payment of any or all sums due for stamps purchased by said Principal, including penalties and interest, during the entire effective period of this bond, shall not exceed the penalty [the amount of the bond] above stated."

After Parkchester and defendant signed the credit bond, Parkchester filed it with the State, which approved it. Following its issuance and approval, this bond was amended by a series of riders, effective March 12, 1975, July 3, 1975, April 27, 1976 and April 14, 1978, and each one of these riders increased the face amount of this bond. Finally, the rider of April 14, 1978 placed the amount of the bond at $225,000.

The performance bond bears identification number 62 14 13, and the title: "Form of Performance Bond for Agents to Affix Cigarette Stamps." The subject bond was originally obtained in June 1974 in the amount of $1,000, and became effective in August 1974. In this particular bond, again Parkchester was named as principal and the State was named as obligee. In the performance bond, the defendant's obligation to the State, in pertinent part, appears as follows:

"THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall faithfully discharge all his duties under said Article Twenty of the Tax Law, and amendments thereto, and the regulations of the State Tax Commission adopted pursuant thereto, then this obligation is void, otherwise to remain in full force and effect, subject, however, to the following conditions:

"1. The aggregate liability of the Surety during the entire effective period of this bond shall not exceed the penalty [the amount of the bond] above stated."

Like the credit bond, mentioned *supra,* this performance bond was filed with the State, and approved by it.

There is no dispute that both the credit and performance bonds were in full force and effect on May 17, 1978, when Parkchester made its last credit purchase of stamps from the State. Moreover, allegedly, also on May 17, 1978, Parkchester filed a bankruptcy petition in the United States District Court for the Southern District of New York. Subsequently, on or about May 31, 1978, the State received from the defendant, notices of cancellation of both the credit and performance bonds that defendant had issued to Parkchester. Each notice was dated May 25, 1978. Even though the State received these notices of cancellation on May 31, 1978, pursuant to the written terms of each bond, such notices did not become effective until 30 days after receipt, or, on or about June 30, 1978, which was approximately six weeks from the date of May 17, 1978, when Parkchester had made its last credit purchase.

By notice of determination of tax due under the Cigarette Tax Law, dated June 1, 1978, the State advised Parkchester that its indebtedness to the State for cigarette tax stamps amounted to $476,063.70, and that, due to Parkchester's default on this debt, the State was demanding immediate payment. It is undisputed that Parkchester has not yet satisfied that debt.

The State, on or about July 20, 1978, filed a proof of claim against debtor Parkchester in the pending bankruptcy proceeding. In its claim, the State alleged that Parkchester owed $477,013.17, which figure was made up of: (1) $476,063.70 for stamps purchased on credit during the period from March 27, 1978 to May 17, 1978, plus (2) $949.47 in interest from the date that this debt became due.

On or about October 20, 1978, the State demanded that defendant carrier honor the two subject bonds, in view of Parkchester's default. In its demand letter, the State notified the defendant, in pertinent part, that: "Demand is hereby made that payment be made by you in the amount of $225,000.00 pursuant to the terms of New York State Credit Bond No. 621433 executed by you July 12, 1974. Request is further made that payment be made by you of $1,000.00 pursuant to the terms of New York State Performance Bond No. 621413 executed by you on August 16, 1974. Interest will be charged at 1 percent a month, on both claims, from the date of demand." Additionally,

in this letter, the State informed the defendant of the proof of claim against Parkchester that had been filed in the Bankruptcy Court, and stated that "upon receipt of the payments demanded [from defendant] assignment of a pro rata part of the [Bankruptcy] claim of the State * * * will be forwarded to you".

When defendant rejected the demand, the State commenced the instant action against defendant to recover the subject $226,000 plus interest.

Defendant served and filed an answer, which contains seven affirmative defenses. In substance, the defendant's position is that, the State has been so grossly negligent in extending credit to Parkchester, it is not entitled to recover. Among other things, the defendant cites these examples of the State's alleged negligence: (1) although Parkchester was delinquent in paying for prior credit purchases, the State continued to sell tax stamps to Parkchester on credit, during March, April and early May of 1978; (2) the State accepted uncertified checks from Parkchester in payment for tax stamps, after prior checks of Parkchester, drawn to the State's order, had been returned for insufficient funds; (3) the State never notified defendant of the financial problems of Parkchester, so the defendant did not have an opportunity to cancel these bonds and minimize its liability; and (4) that the State, in April 1978, permitted defendant to increase by $50,000 the face amount of the credit bond from $175,000 to $225,000, without putting defendant on notice that Parkchester was close to insolvency.

Following the joinder of issue, the State moved for summary judgment, while the defendant moved for an order directing disclosure and the service of a bill of particulars. Special Term: (1) denied the State's motion, upon the basis that there are "triable issues of fact and law, including but not limited to the questions of whether or not the State should have continued to grant additional credit to Parkchester in light of Parkchester's prior defaults (late payments and checks returned for insufficient funds), the extent to which the State knew, should have known or should have inquired into Parkchester's financial condition, and if, when and to what extent the State should have notified [defendant] of Parkchester's precarious financial condition"; and (2) granted defendant's motion to the extent of: (a) ordering the State to submit to an examination before trial, (b) directing the State to furnish a bill of particulars "setting forth the Parkchester cigarette tax stamp account, itemizing purchases and payments from December 1, 1977, to May 17, 1978", and (c) directing the State to produce copies of the Parkchester checks returned for insufficient funds.

We disagree.

After examining the record, we conclude that this action is ripe for summary judgment, since we find no material triable issues of fact. "Where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and * * * no trial is necessary to determine the legal effect of the contract (*Hartigan* v. *Casualty Co. of America,* 227 N. Y. 175, 178; *Brainard* v. *New York Central R.R. Co.,* 242 N. Y. 125, 133)" (*General Phoenix Corp. v Cabot,* 300 NY 87, 92).

Our review of the terms of the subject bonds clearly indicates that defendant surety unconditionally committed itself to pay the State, in the event of default by Parkchester. The law is well established in this State that the rule of construction of contracts "is not changed because the defendant is a surety (*Ulster Co. Savings Inst.* v. *Young,* 161 N. Y. 23; *Gates* v. *McKee,* 13 N. Y. 232, 237)" (*Utica City Natl. Bank v Gunn,* 222 NY 204, 207).

We find nothing contained in the language of these bonds that places a duty on the State to keep defendant informed about the financial condition of Parkchester and/or about whether Parkchester was timely paying for its credit purchases. It has been the law of New York for more than 100 years that, when no duty of notification is imposed on the creditor by the terms of the bond, the surety has the duty to keep *itself* informed of changes in the financial condition of the principal, and the said surety cannot escape liability by claiming to have relied upon the creditor to keep it informed (*McKecknie v Ward,* 58 NY 541; also see, *Lincoln Rochester Trust Co. v Seneca Hotel Corp.,* 41 AD2d 888).

In response, the defendant tries to overcome this New York rule of law by citing Restatement of Security § 124, which was adopted and promulgated by the American Law Institute on May 9, 1941. This Restatement section expands the duty of the creditor. In substance, it requires a creditor, even if it is not required to do so by the specific terms of the obligation, to inform the surety of any information that it discovers that is unknown to the surety, when such information, if it were known to the surety, would entitle the surety to terminate its obligation to the creditor. Furthermore, the Restatement states that breach of this duty by the creditor is a defense to the surety. Our research fails to uncover a single appellate court in this State that has adopted section 124, since its promulgation, and the defendant offers no such authority. As the Court of Appeals of this State stated, more than 125 years ago, in *Brown v Curtiss* (2 NY 225,

230): "In the case of a guarantor there is nothing to exempt him from the ordinary liability of parties who have broken their contracts, which is direct and not conditional. No condition requiring notice of non-payment is inserted in the contract, nor is any inferred by any rule of law. The guarantor is bound to ascertain for himself whether his contract has been performed, and can easily obtain the requisite information from the party for whose conduct he has assumed the responsibility. If he fails to do that, there is no principle which would authorize him to inflict upon another the consequences of his own neglect."

The continuing viability of the *Brown v Curtiss* rule is found in the case of *Stagg Tool & Die Corp. v Weisman* (12 AD2d 99, 103, *affd* 10 NY2d 741) where it is cited as authority.

In view of the fact that defendant does not present any evidence that would raise a triable issue of fact as to whether it was compelled by the State to insure Parkchester, we do not find it significant that the State, pursuant to sections 339.2 and 339.3 (a) of the regulations (20 NYCRR), prescribed the exact form of the two bonds.

After examining Tax Law article 20 and part 339 of the regulations (20 NYCRR), we conclude that the State is not prohibited from continuing to do business with an agent, such as Parkchester, simply because it is late in making payments for credit purchases. In fact, the law was well stated over 100 years ago: "In no case is a surety discharged by mere laches of the creditor" (*Looney v Hughes,* 26 NY 514, 522). We hold that these provisions of the tax law "are intended * * * for the security and protection of the [public], and not for the benefit of the surety" (*Looney v Hughes, supra,* at p 522).

Moreover, defendant would not be released from liability, even if a State employee granted an extension of credit to Parkchester beyond the 30 days provided by statute, since such act would be ultra vires, and would not bind the State (*Goodyear Aluminum Prods. v State of New York,* 12 AD2d 692).

Further, we find that the fact that the State did not demand timely payment from Parkchester was mere forbearance on the State's part, and not an agreement to extend the terms of payment. Such a forbidden extension, beyond the terms expressly agreed to by the surety, requires a formal agreement between the principal and the creditor, which is supported by new consideration. Furthermore, such agreement has to include a clause by which the creditor is barred from enforcing the debt against the principal during the extension. If an agreement containing all of the items, mentioned *supra,* had been entered

into, then a new obligation would have been created, and the defendant would have been relieved of liability (57 NY Jur, Suretyship and Guaranty, § 171). In other words, "[l]eniency shown to a debtor in default, delay permitted by the creditor without change in the time when payment of the debt might be *demanded,* does not, however, constitute an extension of the time for payment" (*Becker v Faber,* 280 NY 146, 151; emphasis in text).

We reject, as meritless, defendant's allegations that the State fraudulently concealed from it, Parkchester's financial condition, since "[a] review of the record before us discloses that [these fraud] allegations of the defendant * * * fail to adequately raise a triable issue" (*Ehrlich v American Moninger Greenhouse Mfg. Corp.,* 26 NY2d 255, 259). Defendant offers no proof that it ever sought information from the State about the financial status of Parkchester during the period that the bonds were in effect. "[T]o hold the surety discharged by the omission to advise [defendant] * * * in the absence of any inquiry [to the State] on the subject, would establish a rule which would make instruments of the character of the [ones] in question of comparatively little value" (*Howe Sewing Mach. Co. v Farrington,* 82 NY 121, 127).

Since "[d]efendant's tenuous effort at issue creation * * * is not sufficient to defeat summary judgment" (*Kramer v Harris,* 9 AD2d 282, 283 [1st Dept]), we grant State's motion for that relief. In view of our disposition of State's motion, we deny defendant's motion for disclosure as moot.

Accordingly, the order, Supreme Court, New York County (Martin Evans, J.), entered April 13, 1984, which, *inter alia,* denied the plaintiff's motion for summary judgment and granted defendant's motion for disclosure to the extent of directing plaintiff to appear for an examination before trial and to furnish a bill of particulars, together with certain described documents, should be reversed, on the law, plaintiff's motion granted, and defendant's motion denied as moot, without costs.

Sandler, J. P., Asch, Fein and Kassal, JJ., concur.

Order, Supreme Court, New York County, entered on April 13, 1984, unanimously reversed, on the law, plaintiff's motion for summary judgment is granted, and defendant's motion for disclosure is denied as moot, without costs and without disbursements.