OPINION OF THE COURT
Eileen Bransten, J.
Plaintiff Syncora Guarantee Inc. (Syncora) moves for partial summary judgment against defendants Countrywide Home Loans, Inc. (CHL); Countrywide Securities Corporation (CSC) and Countrywide Financial Corporation (CFC, and, with CHL and CSC, Countrywide).
*330 First, Syncora seeks judgment in the form of a declaration on its “put-back claims.” (Syncora mem[1] at 3-4.) Syncora seeks a declaration that in order for it to prove its put-back claims it need establish only that a loan breached a representation or warranty in a way that materially and adversely affects “Syncora’s interest in the related mortgage loan under section 2.04 (b) of the SSA” (sales and servicing agreement) at the time the representation or warranty was made. Syncora also seeks a declaration that it need not show that the allegedly noncompliant loan was nonperforming and that Syncora need not show the cause of the loan’s nonperformance. (Id.)
Second, Syncora seeks judgment in the form of a declaration that in order for it to prove its fraud claim, Syncora is not required to show a causal link between the alleged fraud, misrepresentations by Countrywide, and claims payments or loan defaults. Syncora further argues that rescissory damages are an appropriate remedy for fraudulent inducement.
Third, Syncora seeks judgment in the form of a declaration that on its claim for fraud against Countrywide, Syncora need establish only that Countrywide’s alleged misrepresentations induced Syncora to issue insurance policies on terms it would not have agreed to had Syncora known of the alleged misrepresentations and the true facts, and that Syncora need not show a causal connection between Countrywide’s alleged misrepresentations and Syncora’s claims payments made pursuant to Syncora’s insurance policies.
Countrywide opposes.
Background
Syncora brought this action on January 28, 2009 against the Countrywide defendants. On May 6, 2010, Syncora amended its complaint to add additional claims and Bank of America Corporation as a defendant. Syncora alleges that Countrywide fraudulently induced Syncora to insure five securitizations of mortgage loans originated by Countrywide: four securitizations of home equity mortgage loans (HELOCs) and one securitization of “closed-end seconds” (CES) (together, the mortgage loans).
Countrywide sold or conveyed the mortgage loans to trusts. The trusts, in turn, issued notes backed by the mortgage loans *331 to investors. The investors were promised a return of principal with interest.
The rights and obligations of the parties to the securitizations are set forth in contracts (the transaction documents). For the HELOC securitizations, the transaction documents provide for the transfer of the mortgage loans to a Countrywide affiliate who acted as the “depositor.” This transfer was done pursuant to a “Purchase Agreement.” (Syncora mem at 2-3 n 3.) The depositor then entered into a “Sales and Servicing Agreement” (SSA) that transferred the loans to a trust established to hold the HELOCs as collateral and which further engaged CHL to service the mortgage loans. (Id.) For the CES securitization, the process was the same, but the purchase agreement and the SSA were combined into one pooling and servicing agreement (PSA). (Id.)
Syncora, for premiums received, insured that payments to the securitizations’ investors would be made. For each securitization, Syncora issued an insurance policy and, pursuant to the insurance policy, issued a financial guaranty insurance policy (the insurance policies). Each insurance policy guarantees that should the payments received from the mortgage loans be insufficient to cover payments due under the securities, Syncora would pay the shortfall.
Countrywide also issued prospectuses and supplemental prospectuses in connection with each securitization. Syncora alleges that Countrywide made representations and warranties in the transaction documents, prospectuses and supplemental prospectuses which Syncora relied upon. Syncora alleges that Countrywide made misrepresentations in those representations and warranties, and that Syncora has been damaged as a result.
Analysis
I. Standard of Law
CPLR 3212 (e) provides, in relevant part, that “summary judgment may be granted as to one or more causes of action, or part thereof, in favor of any one or more parties, to the extent warranted, on such terms as may be just.”
The standards for summary judgment are well settled. The movant must tender evidence, by proof in admissible form, to establish the cause of action “sufficiently to warrant the court as a matter of law in directing judgment.” (CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) “Failure to make such showing requires denial of the motion, regard *332 less of the sufficiency of the opposing papers.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) Once such proof has been offered, to defeat summary judgment the opposing party must “show facts sufficient to require a trial of any issue of fact.” (CPLR 3212 [b]; Zuckerman, 49 NY2d at 562.) Syncora here moves on legal issues.
II. Arguments
A. Syncora’s Claims for Put-Backs/Substitution
Syncora first moves for summary judgment in the form of a declaration that to prove a misrepresentation “materially and adversely” affects its interest in the underlying mortgage loan under section 2.04 of the SSA and the loan is therefore allegedly subject to put-back, Syncora need only prove that Syncora’s interest in the loan was materially and adversely affected at the time of the misrepresentation — the alleged inaccurate representation or warranty — and it need not prove either that a loan has defaulted or, if it has defaulted, the cause of the default.
Syncora supports its argument by first pointing to the HELOC Series 2006-D Sales and Servicing Agreement (SSA) § 2.04, which states, in relevant part as quoted and relied upon by Syncora, that
“[i]f the substance of any representation or warranty in this Section made to the best of Sponsor’s knowledge or as to which the Sponsor has no knowledge is inaccurate and the inaccuracy materially and adversely affects the interest of the Trust, the Noteholders or the Credit Enhancer [Syncora] in the related Mortgage Loan then, notwithstanding that the sponsor did not know the substance of the representation and warranty was inaccurate at the time the representation or warranty was made, the inaccuracy shall be a breach of the applicable representation or warranty.” (Hawthorne affirmation,[2] exhibit 7, HELOC Series 2006-D SSA, § 2.04 [b].)
Section 2.04 (d) states, again in relevant part:
“The cure for any breach of a representation and warranty relating to the characteristics of the Mortgage Loans in the related Loan Group in the aggregate shall be a repurchase of or substitution for only the Mortgage Loans necessary to cause the *333 characteristics to comply with the related representation or warranty.”
Syncora further asserts section 2.10 of the same SSA also supports its argument. (Id. at 5.) Section 2.10 directly refers to mortgage loans which are not in default or in danger of imminent default, stating, in relevant part, that
“ [notwithstanding any contrary provision of this Agreement, with respect to any Mortgage Loan that is not in default or as to which default is not imminent, no repurchase or substitution pursuant to Section 2.02, 2.03, 2.04, or 2.06 shall be made unless the party repurchasing or substituting delivers to the Indenture Trustee and Opinion of Counsel to the effect that the repurchase or substitution would not result in [tax implications].” (Hawthorne affirmation, exhibit 7, SSA § 2.10.)
Syncora asserts that the plain language of this contract is conclusive evidence of the intent of the parties and is in clear support of its motion. Syncora further contends that its motion for summary judgment is supported by case law interpreting similar contract provisions, “[u]niversal insurance industry practice” and New York statutory and common law of insurance and breach of warranty. (Syncora mem at 3-5.)
Syncora argues that section 2.10 provides that a loan need not be in default to be repurchased, but only that an opinion be provided as to tax implications of the repurchase or substitution of the loan. Based upon this provision, Syncora states a repurchase pursuant to section 2.04 is available whether or not the loan Syncora seeks to have repurchased is in default or default is imminent, so long as a tax implication opinion is provided. Syncora asserts that because a loan may be put back without being in default, whether or not a loan materially and adversely affects Syncora’s interest can therefore be determined without reference to whether or not the loan has defaulted, or whether a breach of a representation or warranty caused the loan to default.
Countrywide asserts that the plain language of the transaction documents controvert Syncora’s argument, and that Syncora has merely selectively relied upon section 2.10 of the HELOC Series 2006-D SSA, which is found in transaction documents in only two of the five securitizations at issue in this case. Countrywide asserts that the parties agreed that the quoted section 2.10 applied for a “handful” of the more than 70 representations and warranties in the transaction documents, *334 and that for all other representations and warranties breach thereof must be shown to materially and adversely affect Syncora’s interest in the loans. Countrywide asserts that this requires a showing of material harm that is not reached absent nonperformance caused by or directly attributable to a Countrywide misrepresentation.
Countrywide counters Syncora’s argument based upon section 2.04 (d) of the HELOC Series 2006-D SSA by noting that Syncora’s quoted language applies to breaches “in the related Loan Group in the aggregate,” and not individually. Countrywide contends that repurchase or substitution of loans is necessary under section 2.04 (d) only to the extent “necessary to cause the characteristics [of the mortgage loans in the aggregate] to comply with the related representation or warranty.” (Countrywide opp mem at 16; Hawthorne affirmation, exhibit 7, SSA § 2.04 [d].) Countrywide argues that section 2.04 (d) thus does not apply to individual loans, but only that, should loans be found to be in breach of a representation or warranty, then loans may be substituted or repurchased to fix the representations of the loan group as a whole. (Countrywide opp mem at 16.)
Countrywide further argues that no repurchase obligation exists under the governing documents unless a misrepresentation and/or breach of warranty materially and adversely affects the interests of the insured or Syncora. Countrywide asserts that because the trusts, and not Syncora, own the mortgage loans, Syncora’s interest in the loans is not affected “[u]nless and until a representation or warranty breach actually ‘materially and adversely affects’ Syncora by causing a loan to default and forcing Syncora to pay more in claims.” (Countrywide opp mem at 17.) Countrywide concludes that until breach occurs, repurchase cannot be required. (Id.)
Syncora asserts in reply that the language of the governing documents make clear that Syncora’s “interest” in the loans it insured was affected upon Countrywide’s misrepresentations regarding the loans. Syncora states that these misrepresentations directly lead to a material and adverse affect on Syncora’s risk in insuring the securitization. (Syncora reply mem[3] at 4-7.) Syncora contends that its interest in the loans may be affected prior to the loans’ nonperformance if Syncora’s risk of loss *335 materially increased as a result of Countrywide’s misrepresentations. Syncora also argues that the HELOC SSA provides concrete basis for repurchase remedy for loans that were misrepresented but may not yet be in default. (Id.)
It is well established that a written agreement which is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. This court is obliged to interpret such a contract so as to give meaning to all of its terms. (See Excel Graphics Tech, v CFG/AGSCB 75 Ninth Ave., 1 AD3d 65, 69 [1st Dept 2003].)
Under New York law, upon motion for summary judgment based on contract, summary judgment is only appropriate where the language of the contract is unambiguous and reasonable minds could not differ as to its meaning. (Cf. State of New York v Peerless Ins. Co., 108 AD2d 385, 390 [1st Dept 1985].) If the contract is reasonably susceptible of more than one interpretation, summary judgment is inappropriate. (NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 58 [1st Dept 2008].)
The court finds that summary judgment is not here appropriate. Syncora bases its argument primarily upon the CWHEQ Revolving Home Equity Loan Trust, Series 2006-D, SSA, and sections 2.04 and 2.10 therein. Syncora’s Commercial Division rule 19-a statement of material facts, statement 19, states that the “SSAs specify a precondition to repurchase of Mortgage Loans ‘not in default’ ” and cites to section 2.10 of that SSA. (Syncora’s rule 19-a statement,[4] statement 19.) Countrywide asserts that a similar provision to the cited one is found in the transaction documents for only two other securitizations, while a third contains similar language. Countrywide asserts that neither the provision nor similar language is found in the transaction documents for the two other securitizations at issue, CWABS 2004-R SSA and the CWABS 2004-Q SSA. (Countrywide’s rule 19-a counter-statement,[5] counter-statement 19.) Based on this, and while not solely dispositive, issues of fact do arise whether Syncora’s argument may be applied to all five securitizations at issue.
Syncora further argues that case law interpreting similar contract provisions, industry practice and New York statutory *336 and common law lend support to its argument. The court disagrees. While the court may examine relevant law, Syncora’s argument is based on the contracts in the transaction documents. For this court to resort to industry practice to determine the meaning of the argued provisions necessarily removes the issue from decision by summary judgment, as the contract is then not clear on its face. (State of New York v Peerless Ins. Co., 108 AD2d at 390; Credit Suisse Sec. [USA] LLC v Ask Jeeves, Inc., 24 Misc 3d 1241 [A], 2009 NY Slip Op 51839[U], *5 [Sup Ct, NY County, Aug. 20, 2009, Bransten, J.].)
Finally, this court finds that the applicable provisions of the SSA and the PSA are subject to varying interpretations regarding “interest” and affect on interest, as well as varying and equally valid interpretations of how the “aggregate” in SSA § 2.04 (d) must be defined. The issue is therefore unripe for summary judgment. (NFL Enters. LLC v Comcast Cable Communications, LLC, 51 AD3d at 58.)
Syncora’s motion for summary judgment that its claim for breach of the repurchase obligation is not limited to nonperforming loans and that Syncora is not required to show that CHL’s breach of the representations and warranties in the transaction documents caused the nonperformance of the loan is denied. The court notes that it does not hold, by implication, that Syncora must show that a breach of a representation or warranty caused a loan’s nonperformance, or that Countrywide is not contractually obligated to repurchase misrepresented loans. The holding is limited solely to Syncora’s burden of proof on its motion for summary judgment.
B. Syncora’s Claims for Fraud and Breach of Warranty
Syncora second seeks a judgment in the form of a declaration that
“whether an insurer is entitled to rescissory damages for fraudulent inducement of an insurance agreement is assessed as of the time that the contract is fraudulently induced, and that such a claim does not require any showing of a causal link between the fraud and particular claims payments or loan defaults.” (Syncora mem at 13.)
Syncora also seeks a declaration that to succeed on its claim for breach of the insurance and indemnity agreement, Syncora need only show that Countrywide made a statement that was untrue or misleading in a material way when it was made and Syncora is not required in proving its claim to show that any *337 loans have defaulted, any connection between a misrepresentation and a subsequent loan default, or provide any evidence of any event subsequent to the misrepresentation. Syncora contends that the latter question hinges on an interpretation of the insurance and indemnity agreement (I & I). (Hawthorne affirmation, exhibit 11.) Syncora contends that section 2.01 (k) of the I & I makes clear that the materiality of a misrepresentation made by Countrywide is measured at the time that the misrepresentation was made.
Section 2.01 (k) of the I & I states, in relevant part: “Accuracy of Information. Neither the Operative Documents nor other material information relating to the Mortgage Loans, the operations of Countrywide, the Issuer or the Depositor or the financial condition of Countrywide, the Issuer or the Depositor (collectively, the ‘Documents’), as amended, supplemented or superseded, furnished to the Insurer in writing or in electronic form by Countrywide, the Issuer or the Depositor contains any statement of a material fact which was untrue or misleading in any material respect when made.” (Hawthorne affirmation, exhibit 11, Insurance and Indemnity Agreement, SWHEQ Revolving Home Equity Loan Trust, Series 2006-D [I & I], § 2.01 [k].)
Syncora’s argument assumes that rescissory damages are appropriate. This issue is discussed below. In addition to case law, Syncora’s asserts that its arguments are informed by Insurance Law §§ 3105 and 3106. Syncora’s arguments on both its fraud and breach claims are considered together.
Countrywide, in opposition, contends that Syncora must establish that the claims payments it made pursuant to its issued policies were caused by Countrywide’s alleged misrepresentations and not by another cause, including the economic downturn that began in late 2007. Countrywide further argues that Insurance Law § 3105 does not apply to Syncora’s common-law claim for fraud, and Insurance Law §§ 3105 and 3106 do not provide for rescissory damages. Finally, in a footnote, Countrywide argues that section 2.01 (k) of the I & I does not apply as stated by Syncora. Countrywide asserts that section 2.01 (k) is limited by section 2.01 (m) of the I & I. Section 2.01 (m) directs that
“the remedy for any breach of a representation or *338 warranty of Countrywide in Section 3.02 of the Purchase Agreement and in section 2.04 of the Sales and Servicing Agreement and the remedy with respect to any defective Mortgage Loan or any Mortgage Loan as to which there has been a breach of representation or warranty under section 3.02 of the Purchase Agreement shall be limited to the remedies specified in the Sales and Servicing Agreement.” (Hawthorne affirmation, exhibit 11.)
Countrywide argues that a claim for breach under section 2.01 (k) of the I & I is precluded by section 2.01 (m).
In reply, Syncora argues that Countrywide incorrectly ignores section 2.01 (m)’s clause stating that the “remedy” mentioned in the section is limited to “Section 3.02 of the Purchase Agreement and . . . Section 2.04 of the Sales and Servicing Agreement.” Syncora asserts that it moves for breach of section 2.01 (k) of the I & I, and therefore it is not limited to the remedies specified in the SSA.
(a). Applicable Time to Prove Causation
Although posited slightly differently than the argument in MBIA Ins. Corp. v Countrywide Home Loans, Inc. (34 Misc 3d 895 [2012] [MBIA v Countrywide]), a related case also before this court having arguments corresponding to those made in this matter by both plaintiff therein and Countrywide, defendants in both cases, the base issue before the court in this motion is when causation occurs in claims for insurance fraud and breach of representations and warranties. Syncora asserts in both its fraud and breach claims that causation occurred, and liability results, when Countrywide made misrepresentations that were material and which induced Syncora to issue financial guaranty insurance policies. Syncora asserts that had it known the true facts of the underlying mortgage loans, it may have either declined to issue its financial guaranty insurance policies or issued the policies on different terms. Syncora contends that it was denied the opportunity to examine the facts based on proper information, and, thus, all payments it has made pursuant to the policies result from Countrywide’s alleged misrepresentations.
Countrywide argues that Insurance Law §§ 3105 and 3106 do not provide for damages, but only that Syncora may avoid the insurance contracts should Syncora prove a material misrepresentation was made. Countrywide argues that Syncora, having chosen to seek damages for all payments it has or will make *339 pursuant to the insurance policies, must prove that its claims payments were directly and proximately caused by Countrywide’s alleged misrepresentations. Countrywide further argues that New York law does not allow for rescissory damages.
(i) The First Department Decision of June 30, 2011
As a preliminary matter, Countrywide asserts that the First Department has held in MBIA v Countrywide that Syncora must prove that Countrywide’s alleged misrepresentations were the direct and proximate cause of Syncora’s purported losses. (Countrywide opp mem at 6-7.) This court, however, finds that Countrywide has misinterpreted the First Department’s June 30, 2011 decision with regard to causation. (See MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287 [1st Dept 2011].) Countrywide’s quote of the First Department is not a direction, but is a rejection of Countrywide’s contention that MBIA’s fraud claim should be dismissed for failure to plead a causal link between Countrywide’s alleged misrepresentations and MBIA’s alleged damages. The First Department held that MBIA’s pleading sufficiently alleged loss causation to avoid Countrywide’s motion to dismiss, as “it was foreseeable that MBIA would suffer losses as a result of relying on Countrywide’s alleged misrepresentations about the mortgage loans.” (Id. at 296.) The First Department further held that “[i]t cannot be said, on this pre-answer motion to dismiss, that MBIA’s losses were caused, as a matter of law, by the 2007 housing and credit crisis.” (Id.) The court did not hold that MBIA’s claims payments must be shown to have been directly caused by Countrywide’s alleged misrepresentations.
(ii) Insurance Law §§ 3105 and 3106
Syncora asserts that its claims are informed by Insurance Law §§ 3105 and 3106. Insurance Law § 3105, titled “Representations by the insured,” states, in pertinent part:
“(a) A representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.
“(b) (1) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No *340 misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.”
Section 3106, titled “Warranty defined; effect of breach,” states, again in pertinent part:
“(a) In this section ‘warranty’ means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer’s liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract. The term ‘occurrence of loss, damage, or injury’ includes the occurrence of death, disability, injury, or any other contingency insured against, and the term ‘risk’ includes both physical and moral hazards.
“(b) A breach of warranty shall not avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract. If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, a breach of warranty shall not avoid such contract or defeat recovery thereunder with respect to any kind or kinds of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty.”
Syncora bases its claims on New York common law as informed and influenced by these sections. Syncora asserts that to prevail on its claims for fraud and breach of the insurance and indemnity agreement, Syncora must show that a material misrepresentation induced it to issue a policy that, had it known of the misrepresentation, it would not have issued or would have issued on different terms. Syncora argues that if the misrepresentation materially increased its risk of loss, no requirement of a causal link between the breach of warranty and subsequent claim payment need be shown. Further, under Insurance Law §§ 3105 and 3106, Syncora contends that rescission of the insurance polices would be appropriate. However, as rescission is allegedly not here possible, Syncora seeks rescis *341 sory damages. The first issue that must be decided is the relevant time period for causation.
(iii) Causation
Syncora posits common-law claims for fraud and breach of warranty. The court finds that in this insurance context, with Syncora as an insurance company and Countrywide as an applicant for insurance, the claims are properly informed by New York common law and Insurance Law §§ 3105 and 3106.
Both New York common law and Insurance Law are clear that a material misrepresentation made at the time an insurance policy is being procured may lead to a policy being rescinded and/or avoided. (See BW Sportswear, Inc. v Those Certain Underwriters at Lloyd’s of London, Subscribing to Certificate No. 34665, 32 Misc 3d 1245[A], 2011 NY Slip Op 51707[U], *3 [Sup Ct, NY County 2011, Oing, J.], citing Kiss Constr. NY, Inc. v Rutgers Cas. Ins. Co., 61 AD3d 412 [1st Dept 2009]; Insurance Law § 3105.) This corresponds to a standard claim for fraud, in which fraud is complete when a misrepresentation is made that induces a party to take action and that party suffers damages as a result. (See e.g. Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009].) This time frame further corresponds to Syncora’s claim for breach of section 2.01 (k) of the I & I. The court therefore finds that no basis in law exists to mandate that Syncora establish a direct causal link between the misrepresentations allegedly made by Countrywide and claims made under the policy.
In order to prove its claims for fraud and breach of warranty, Syncora must prove all elements of its claims. (Small v Lorillard Tobacco Co., 94 NY2d 43, 57 [1999] [fraud]; Ainger v Michigan Gen. Corp., 476 F Supp 1209, 1223-1224 [SD NY 1979] [discussing breach of warranty].) Of particular importance here, Syncora must prove that Countrywide made misrepresentations that were material to its decisions to issue the insurance policies.
In order to show materiality, as defined by Insurance Law § 3105 (b) and case law, Syncora must show that it relied on Countrywide’s alleged misrepresentations in that the alleged statements induced Syncora to take action which Syncora might otherwise not have taken, or would have taken in a different manner: “The question in such case is not whether the company might have issued the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application which it might *342 otherwise have refused.” (Geer v Union Mut. Life Ins. Co., 273 NY 261, 269 [1937]; Interested Underwriters at Lloyd’s v H.D.I. III Associates, 213 AD2d 246, 247 [1st Dept 1995].) “For purposes of determining materiality, there need not be a causal connection between the misrepresented condition and the loss suffered.” (Mutual Benefit Life Ins. Co. v Snyder, 1989 WL 16610, *3, 1989 US Dist LEXIS 1659, *8 [SD NY 1989], citing Greene v United Mut. Life Ins. Co., 38 Misc 2d 728, 730-731 [Sup Ct, Bronx County 1963], affd 23 AD2d 720 [1st Dept 1965].)
Syncora must prove for its fraud claim that it issued the insurance policies on representations made in the policies’ applications, and that it would not have done so or would have issued the policies on different terms had the alleged misrepresentations not been made. Similarly, Syncora must prove for its breach of warranty claim that Countrywide’s alleged misrepresentations materially increased Syncora’s risk of loss. (See Star City Sportswear v Yasuda Fire & Mar. Ins. Co. of Am., 1 AD3d 58, 62 [1st Dept 2003]; Insurance Law § 3106 [b].)
Syncora must then prove that it was damaged as a direct result of the material misrepresentations. Upon reaching its burden of proof for each claim, Syncora must then prove the amount of its damages.
The question therefore next turns to whether Syncora’s claim for rescissory damages is valid in this instance, or if, having chosen to inform its claims as per New York Insurance Law, Syncora is limited to rescission.
(iv) Rescission versus Rescissory Damages
Countrywide asserts that under Insurance Law §§ 3105 and 3106, Syncora may only seek to rescind or avoid the insurance policies. Syncora contends that to void or rescind the insurance policies would be unfair to the trusts, and is prohibited by binding contract. Thus, Syncora moves for recognition that it may recover its alleged economic injury through rescissory damages.
Though traditionally directed toward breach of contract and tort, elementary damages theory is instructive to the case at bar.
Compensatory damages are intended to make the victim of wrongdoing whole. The damages are to place the wronged victim in the same position as it was prior to the wrongdoing, without providing the recovery of any windfall. (Ross v Louise Wise Servs., Inc., 8 NY3d 478, 489 [2007]; New York City Economic *343 Dev. Corp. v T.C. Foods Import & Export Co., Inc., 11 Misc 3d 1087[A], 2006 NY Slip Op 50754[U], *3 [Sup Ct, Queens County 2006, Weiss, J.]; see Haig, Commercial Litigation in New York State Courts § 46:2 [West’s NY Prac Series, vol 4, 3d ed] [“Whether arising from a breach of contract or a tort, compensatory damages are intended to compensate the injured party for its losses caused by the breach or tortious conduct. Compensatory damages ‘proceed from a sense of natural justice’ to repair the losses caused to one by the wrong of another”].)
Rescissory damages, while not often used in New York, are far from an unknown form of relief. Rescissory damages are an established remedy where rescission, the voiding of a contract, may not be a valid form of relief. As the Delaware Chancery Court stated in 2003: “Rescissory damages are designed to be the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable. A solid body of case law so holds.” (Gotham Partners, L.P. v Hallwood Realty Partners, L.P., 855 A2d 1059, 1072 [Del Ch 2003], citing Cinerama, Inc. v Technicolor, Inc., 663 A2d 1134, 1144-1147 [Del Ch 1994]; see also Telstra Corp. Ltd. v Dynegy, Inc., 2003 WL 1016984, *8, 2003 Del Ch LEXIS 18, *26 [Del Ch, Mar. 4, 2003] [holding against granting rescissory damages, but stating that “(a)t equity, rescissory damages should only be awarded where the ‘equitable remedy of rescission is impractical’ but otherwise warranted”].)
Countrywide asserts that several courts applying New York law have held that rescissory damages are not available in this state. Countrywide cites Raymond Weil, S.A. v Theron (585 F Supp 2d 473, 488 [SD NY 2008]) and Grace v Rosenstock (228 F3d 40, 50 [2d Cir 2000]) in support of its argument. (Countrywide opp mem at 8.) The court finds that, while the cited cases do not grant rescissory damages, the cases do not hold against their availability. In Raymond Weil, the Southern District of New York court held that the contract in question was “no longer operative,” and therefore plaintiff was “not entitled to the recessionary damages” it sought. Rather, plaintiff may have been entitled, upon proof, to compensatory damages. (Raymond Weil, S.A., 585 F Supp 2d at 487-488.) In Grace, the Second Circuit court held that New York law does not authorize “rescissory damages for a freeze-out merger as to which a dissenting shareholder had a right of appraisal.” (Grace, 228 F3d at 50.) Neither situation is applicable to the case at bar. Instead, the court holds that the Delaware test to determine the appropriateness of rescissory damages is applicable.
*344 Here, rescission is warranted, but impractical. First, to rescind the insurance policies would be to harm the policies’ beneficiaries, the noteholders, and may lead to greater economic harm. Second, rescission is further impractical, if not impossible, under the governing transaction documents. (See Hawthorn e affirmation, exhibit 9, at A-4; exhibit 10, at A-4 [insurance policies providing that Syncora “shall unconditionally and irrevocably pay” under the policies].) Based upon the impracticability of rescission, and the fact that rescissory damages are the financial equivalent of rescission (see e.g. St. Clair Shores Gen. Empls. Retirement Sys. v Eibeler, 745 F Supp 2d 303, 315 [SD NY 2010]; Outdoor Life Network, LLC v EMTA Corp., 2006 WL 3834287, *5, 2006 US Dist LEXIS 94181, *18 [D Ariz, Dec. 29, 2006]; In re MAXXAM, Inc., 659 A2d 760, 775 n 15 [Del Ch 1995]), the court holds that rescissory damages are appropriate in this instance under persuasive case law and this court’s power to award relief. (See CPLR 3017 [a]; case law, supra.)
Syncora seeks rescissory damages in the amount that it has been required to pay pursuant to the insurance policies, less premiums Syncora received under the policies. The court notes that, should Syncora prove its case, rescissory damages minus premiums received will make Syncora whole without providing a windfall. Rescissory damages, if found warranted, will thus serve the goal of damages theory and justification. (See also Equitable Life Assur. Socy. v Kushman, 276 NY 178, 184 [1937] [“Damages may be recovered as incident to an action in equity for a rescission”].)
Syncora has, relevant to this motion, made claims for fraud and breach of warranty. Syncora bases both claims upon alleged misrepresentations made by Countrywide that purportedly caused Syncora to enter into the insurance policies and were in violation of stated representations and warranties. It is without basis in case law to require Syncora to provide a causal link between the alleged misrepresentations and payments made pursuant to the policies. The elements of the claims are well established and make no such holding; it is well settled that it is upon the misrepresentation that induces action resulting in damages that fraud or breach occurs. (See supra.) Further, the court finds that rescissory damages may make Syncora whole for any wrongdoing which it is able to prove. The court therefore grants Syncora’s motion for partial summary judgment seeking a declaration regarding its burden of proof on its claims for fraud and breach of representation and/or warranty.
*345 Order
Accordingly, it is hereby ordered that Syncora Guarantee Inc.’s motion for partial summary judgment is granted to the extent that Syncora Guarantee Inc. must establish for its claim of fraud that misrepresentations by the defendant(s) induced Syncora to issue insurance policies on terms to which it otherwise would not have agreed and Syncora is not required to establish a direct causal link between defendant(s) misrepresentations and Syncora’s claims payments made pursuant to the insurance policies at issue; and it is further ordered that Syncora Guarantee Inc.’s motion for partial summary judgment is granted to the extent that Syncora must establish for its claim for breach of the insurance and indemnity agreement against Countrywide Home Loans, Inc. that CHL’s breach of warranties in the issued insurance policies’ transaction documents increased the risk profile of the issued insurance policies and Syncora is not required to establish a direct causal connection between proven warranty breaches by CHL and Syncora’s claims payments made pursuant to the insurance policies at issue; and it is further ordered that Syncora Guarantee Inc.’s motion for partial summary judgment is granted to the extent that Syncora Guarantee Inc. may seek rescissory damages upon proving all elements of its claims for fraud and breach of representation and/or warranty; and it is further ordered that Syncora Guarantee Inc.’s motion for partial summary judgment is otherwise denied.

. Memorandum of law in support of plaintiffs motion for partial summary judgment (Syncora mem). Syncora does not specify its “put-back claims.”

. Affirmation of Donald W Hawthorne in support of order to show cause (Hawthorne affirmation).

. Reply memorandum of law in support of plaintiffs motion for partial summary judgment (Syncora reply mem).

. Commercial Division rule 19-a statement in support of plaintiff’s motion for partial summary judgment (Syncora’s rule 19-a statement).

. Countrywide’s Commercial Division rule 19-a counter-statement of material facts in opposition to plaintiff’s motion for partial summary judgment (Countrywide’s rule 19-a counter-statement).