(May 18, 1993)

■ CAE INDUSTRIES LTD. et al., Appellants, v KPMG PEAT MARWICK, Also Known as PEAT MARWICK MAIN & Co., Also Known as PEAT MARWICK MITCHELL & COMPANY, Respondent. [597 NYS2d 402] —Order of the Supreme Court, New York County (Francis N. Pecora, J.), entered February 7, 1992, which, *inter alia,* granted defendant's motion to dismiss insofar as it sought dismissal of plaintiffs' first cause of action, unanimously reversed, on the law, to the extent of denying the motion as to the first cause of action, reinstating that

cause and remanding the matter for further proceedings, with costs.

The present lawsuit arises out of a transaction pursuant to which plaintiff CAE Industries Ltd. purchased four companies, referred to in this litigation as the "Link Companies", from Aerospace Holdings Company, a subsidiary of the Singer Company. The agreed upon purchase price was $550 million subject to adjustments to be computed on the basis of pre- and post-closing audits of the Link Companies, either performed or to be performed by defendant Peat Marwick. Specifically at issue on this appeal is whether plaintiffs have in their first cause of action stated a claim for breach of contract based upon Peat Marwick's alleged failure to abide by its agreement to render and timely deliver to plaintiff CAE, a post-closing audit adhering to generally accepted accounting standards.

According to the complaint, the allegations of which must be accepted as true for purposes of determining whether a cause of action is sufficiently stated *(see, Guggenheimer v Ginzburg,* 43 NY2d 268, 275), defendant, in an agreement the terms of which are set forth in a letter by the defendant to plaintiff CAE dated August 29, 1988, undertook to perform a post-acquisition audit of the Link Companies to determine whether the Link combined balance sheets met generally accepted accounting standards and to assess the overall financial condition of the companies as of the time of the closing. The audit was to be performed in accordance with generally accepted accounting standards and delivered within 45 days of the August 22, 1988 closing; its results were to be used to compute final post-acquisition adjustments to the purchase price which, on the basis of pre-closing audits conducted by Peat Marwick, had been provisionally adjusted in the seller's favor from the base price of $550 million to $560 million. The costs of the post-closing audit were to be borne equally by buyer and seller. The complaint alleges that the post-aquisition audit was never performed, as promised, in conformity with generally accepted accounting standards, indeed, that the balance sheet eventually delivered was captioned "Unaudited-See Accompanying Disclaimer of Opinion". It is further alleged that whatever service was performed was not performed within the 45 day period stipulated in the August 29, 1988 letter reflecting the parties' agreement; the document purporting to be the contracted for report was not delivered until January 13, 1989, nearly five months after the closing. As a consequence of the late and non-conforming audit, the plaintiffs claim to have been prevented from obtaining the benefit

of substantial adjustments in their favor; they contend that had the audit been conducted in accordance with generally accepted accounting principles as agreed, it would have disclosed that the purchased companies were worth substantially less than the amount provisionally paid at the closing. The plaintiffs contend further that had the contracted for audit been delivered within the stipulated time frame, the post-closing adjustments would have followed with reasonable expedition enabling plaintiffs ultimately to receive the benefit of those adjustments, allegedly amounting to more than $54 million, in 1988. Instead, as a result of the defendant's default in the performance of its contractual obligations, the plaintiffs claim to have been forced to resort to a lengthy and costly arbitration to recover the amounts to which the anticipated adjustments in their favor would entitle them. Their prospects of ever recovering the entire amount allegedly due, plaintiffs maintain, have been significantly compromised by the filing in November 1989 of Aerospace's parent company, Singer, for protection under chapter 11 of the Bankruptcy Code (11 USC).

The above-described cause of action was dismissed by the motion court which noted in support of its determination that the plaintiffs had not shown that they had been damaged by defendant's delay. The court also noted that the complaint acknowledged a valid excuse for the defendant's non-performance and, sua sponte, cited the plaintiffs' failure to plead payment of their half of the audit fee as a defect warranting dismissal of the breach of contract cause. It is our view that the dismissal was not warranted, either for the reasons advanced by the defendant or the court.

It is very basic that when inquiring to ascertain whether a cause of action is stated, a court must afford the allegations of the complaint the benefit of every reasonable supporting inference (see, 219 Broadway Corp. v Alexanders, Inc., 46 NY2d 506, 509; O'Henry's Film Works v Nabisco, Inc., 112 AD2d 825). Dismissal is warranted only when the stated allegations do not, together with all reasonable supporting inferences, state a legally cognizable claim for relief (see, supra; see also, Pietropaoli Trucking v Nationwide Mut. Ins. Co., 100 AD2d 680). The inquiry is not into whether the validity of the claim has been in any measure demonstrated; it is rather confined to whether the relevant allegations of the complaint liberally construed state a theory upon which relief can be granted (Guggenheimer v Ginzburg, supra, at 275; LoPinto v J. W. Mays, Inc., 170 AD2d 582).

Obviously, plaintiffs, in order to defeat the defendant's

motion to dismiss, were not obliged, as the motion court apparently thought, to show that they had actually sustained damages. It was sufficient that the complaint contained allegations from which damages attributable to the defendant's breach might be reasonably inferred *(see, Daukas v Shearson, Hammill & Co.,* 26 AD2d 526). And, indeed, it is not difficult to understand from the detailed allegations of the complaint how the defendant's failure to render the promised audit and to do so within the agreed upon time frame could have compromised the plaintiffs' right to recover amounts paid in excess of the finally adjusted purchase price or, at the very least, made that recovery very much more costly.

It is also clear that the first cause of action was not properly dismissed by reason of the court's observation that a valid excuse for the disclaimer was alleged in the complaint. No such excuse was alleged in the complaint which, to the contrary, stated in direct response to defendant's proffered excuse for its disclaimer: "[No one] restricted Peat Marwick from obtaining required security clearance, access to documentation, or the ability of Peat Marwick to perform tests or such other work as Peat Marwick might consider necessary to ensure compliance with GAAS [generally accepted accounting standards]." Moreover, impossibility of performance is an affirmative defense to be pleaded and proved, if at all, by the party against whom the breach is asserted, here Peat Marwick. As such, the defense could have had no conceivable relevance at this stage of the litigation which had as its exclusive permissible focus the adequacy of the plaintiffs' pleading.

Finally, there is no merit to the motion court's view that the plaintiffs' first cause was deficient for failing to allege payment of plaintiff CAE's share of the audit fee. The complaint, properly construed for purposes of deciding the within motion, indicates persuasively that CAE's payment was not a condition precedent to Peat Marwick's performance. And, it is clear that in alleging Peat Marwick's failure to deliver a timely audit conforming to the specifications of the parties' agreement, the complaint sufficiently states grounds upon which plaintiffs' obligation to make payment for the audit would have been discharged. Under the circumstances alleged then, the allegation of payment was unnecessary to the sufficiency of plaintiffs' first cause of action. Concur—Murphy, P. J., Carro, Ellerin, Kupferman and Asch, JJ.