Financial Guaranty Insurance Company, Plaintiff,

against
Morgan Stanley ABS Capital I Inc. and MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, as successor to MORGAN STANLEY MORTGAGE CAPITAL INC., Defendants.


652853/2014

Counsel for plaintiff Financial Guaranty Insurance Company:
PATTERSON BELKNAP WEBB & TYLER LLP
Erik Haas
Henry J. Ricardo
Jonathan Hatch
Counsel for defendants Morgan Stanley ABS Capital I Inc. and Morgan Stanley Mortgage Capital Holdings LLC, as successor to Morgan Stanley Mortgage Capital Inc.:
DAVIS POLK & WARDWELL LLP
James P. Rouhandeh
Brian S. Weinstein
Elisabeth Grippando
Scott A. Eisman


Marcy Friedman, J.

This action for breach of contract is brought by Financial Guaranty Insurance Company (FGIC), a monoline insurer that issued a financial guaranty insurance policy guaranteeing payments on certain securities issued in a transaction known as Basket of Aggregated Residential NIMS 2007-1 (the NIM Securitization Transaction or Transaction). Defendants Morgan Stanley ABS Capital I Inc. (MSAC) and Morgan Stanley Mortgage Capital Holdings LLC, as successor to Morgan Stanley Mortgage Capital Inc. (MSMC) (collectively, Morgan Stanley), move to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). 
According to the complaint, "[t]he Transaction is a securitization of securities from 48 previous securitizations, supported by many thousands of residential Mortgage Loans." (Compl., ¶ 22.) "Morgan Stanley aggregated 48 previously issued asset-backed securities (the 'Underlying NIM Securities'), almost half of which were issued in securitizations sponsored by [*2]Morgan Stanley and its affiliates and all of which Morgan Stanley had previously held on its books." (Id., ¶ 2.) The Underlying NIM Securities "are 'net interest margin' securities, each of which is supported by other securities that were issued in connection with a previous securitization . . . of mortgage loans. . . ." (Id.)[FN1]

The Transaction was effectuated through a series of agreements executed by Morgan Stanley and/or its affiliates (the Transaction Documents). (Id., ¶ 55.) Nonparty Morgan Stanley & Co. Inc., as Seller, pooled and securitized the Underlying NIM Securities. This entity then transferred the Underlying NIM Securities to its affiliate, defendant MSAC as Depositor, pursuant to a Sale Agreement dated May 31, 2007. (Id., ¶¶ 18, 54, 56.) MSAC sold and assigned the Underlying NIM Securities to non-party Basket of Aggregated Residential NIMS 2007-1 Ltd. as Issuer, pursuant to an Underlying NIM Securities Purchase Agreement, also dated May 31, 2007 (the NIM Purchase Agreement). (Id.; Rouhandeh Aff., Exh. 2.) Pursuant to an Indenture, dated as of May 31, 2007 (the Indenture), the Issuer pledged the Underlying NIM Securities to Deutsche Bank National Trust Company (the Indenture Trustee) and, together with Basket of Aggregated Residential NIMS 2007-1 Corp. (the Co-Issuer), issued two classes of securities, Class N-1 Notes and Class N-2 Notes. (Id., ¶ 57; Rouhandeh Aff., Exh. 3.) 
As alleged in the complaint, to enhance the credit rating and marketability of the Class N-1 Notes, Morgan Stanley solicited and obtained a financial guaranty insurance policy from FGIC, in which FGIC unconditionally and irrevocably guaranteed the principal and interest payments due to the holders of the Class N-1 Notes. (Id., ¶¶ 58-59.) The FGIC policy was issued pursuant to an Insurance and Indemnity Agreement, also dated as of May 30, 2007 (the Insurance Agreement). The parties to this Agreement were FGIC, Morgan Stanley Mortgage Capital Inc. (to which defendant Morgan Stanley Mortgage Capital Holdings LLC is the successor) as "Responsible Party," defendant MSAC as Depositor, the Issuer and Co-Issuer, and the Indenture Trustee. (Rouhandeh Aff., Exh. 4.) 
As further alleged in the complaint, "FGIC agreed to issue its irrevocable Policy based on warranties Morgan Stanley gave to FGIC." (Compl., ¶ 4.) These warranties, made in the various agreements governing the Transaction, related, among other things, to the Transaction and to the quality and characteristics of the Underlying NIM Securities and the underlying mortgage loans. (Id., ¶ 4.) More particularly, in the NIM Purchase Agreement, MSAC made [*3]representations and warranties (the Underlying NIM Warranties) as to compliance with underwriting guidelines and as to the quality and characteristics of the Underlying NIM Securities as well as the mortgage loans. (Id., ¶¶ 6, 56; NIM Purchase Agreement, § 3.) Although FGIC was not a signatory to the NIM Purchase Agreement, the Underlying NIM Warranties were expressly incorporated in the Insurance Agreement, pursuant to section 2.01 (l) of that Agreement.[FN2]

Section 2.02 (i) of the Insurance Agreement named FGIC an express third-party beneficiary of the NIM Purchase Agreement. In the Insurance Agreement, MSAC and MSMC made additional warranties to FGIC concerning the Transaction and Morgan Stanley's operations (the Transaction Warranties). (Compl., ¶¶ 7, 61.) As set forth in the Insurance Agreement, the Transaction Warranties included, among others, that the Transaction Documents did not "contain any statement of a material fact which was untrue or misleading in any material respect when made" (2.01 [j]); that the Offering Documents did not contain any untrue or misleading statement of material fact (2.01 [k]); and that information provided to ratings agencies did not contain any untrue or misleading statement of material fact (2.01 [q]).
FGIC asserts that Morgan Stanley's warranties "were pervasively and material false," as demonstrated by a forensic analysis of the underlying mortgage loans, which "focused primarily on two loan attributes: (1) the occupancy status of the mortgaged properties and (2) the appraisal value of the mortgaged properties, which is a component of a key loan metric, the combined loan-to-value ('CLTV') ratio." (Id., ¶¶ 9-10.) Breaches of the warranties allegedly "materially and adversely affected FGIC's risk of loss as the insurer of the Transaction." (Id., ¶ 14.) 
FGIC pleads four causes of action: The first is based on Morgan Stanley's breaches of the Transaction Warranties and Underlying NIM Warranties." (Id., ¶¶ 243-248.) This cause of action seeks not only damages "under the common law and New York Insurance Law § 3106, in an amount to be proved at trial," but also Morgan Stanley's repurchase of the affected Underlying NIM Securities. (Id., ¶¶ 247-248.) The second alleges that Morgan Stanley's breaches of the Transaction Warranties and Underlying NIM Warranties "constitute a material breach of the Insurance Agreement." (Id., ¶ 251.) This cause of action alleges that these breaches "are so substantial and fundamental as to defeat the object of the parties in entering into the Transaction" (id.), and seeks damages "under the common law and New York Insurance Law § 3106, in an amount to be proved at trial." (Id., ¶ 252.) The third cause of action alleges that both Morgan Stanley defendants breached section 2.02 (e) of the Insurance Agreement, requiring them "to provide written notice to FGIC of the occurrence of any default or event of default in the Underlying Securitizations." (Id., ¶ 254.) This cause of action seeks damages "at common law in an amount to be proven at trial." (Id., ¶ 256.) The fourth cause of action, asserted against MSMC only, is for failure to reimburse FGIC pursuant to the Insurance Agreement for amounts required to be paid or deposited by MSMC pursuant to the Transaction Documents. (Id., ¶ 258.) [*4]This cause of action is not at issue on this motion.
Discussion [FN3]

It is well settled that on a motion to dismiss pursuant to CPLR 3211 (a) (7), "the pleading is to be afforded a liberal construction (see, CPLR 3026). [The court must] accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (Leon v Martinez, 84 NY2d 83, 87-88 [1994]. See 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144 [2002].) However, "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts." (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]; see also Water St. Leasehold LLC v Deloitte & Touche LLP, 19 AD3d 183 [1st Dept 2005], lv denied 6 NY3d 706 [2006].) When documentary evidence under CPLR 3211 (a) (1) is considered, "a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." (Leon, 84 NY2d at 88.)
Morgan Stanley moves to dismiss the complaint to the extent that it seeks future damages. It further contends that the complaint fails to state a claim that Morgan Stanley breached warranties regarding owner occupancy statistics and CLTV ratios. Morgan Stanley also contends that the first through third causes of action must be dismissed because they fail to adequately plead causation. (Defs.' Memo. In Supp., at 1-2.)
Future Damages
The complaint expressly seeks damages not only for "all [claims] payments made to date" by FGIC, but also for "all [claims] payments required to be made in the future under its Policy, as well as the costs incurred in attempting to minimize its losses." (Compl., ¶¶ 242, 16.) Morgan Stanley asserts that recovery of such future damages is barred on three grounds.
First, Morgan Stanley contends that the recovery of future claims payments is barred by 
Insurance Agreement § 5.02 (a) (iii). Section 5.02 (a) provides that, upon an Event of Default, FGIC "may exercise any one or more of the rights and remedies" set forth in that section, which include:
"(iii) take whatever action at law or in equity as may appear necessary or desirable in its judgment to collect the amounts, if any, then due under this Insurance Agreement or any other Transaction Document or to enforce performance and observance of any obligation, agreement or covenant of the Responsible Party [MSMC], the Depositor [MSAC] or the Co-Issuers under this Insurance Agreement or any other Transaction Documents."[FN4]

Focusing solely on the words "then due" in this provision, Morgan Stanley argues that this provision limits FGIC's damages to past claims payments. (See Defs.' Memo. In Supp., at 8.) This argument cannot be credited because it is made without analysis of the remedies provided for in the remainder of the same provision or of the alternative remedies provided for in the Insurance Agreement itself and in the other Transaction Documents. (See Insurance Agreement §§ 5.02 (a) and (b) [authorizing FGIC, upon the occurrence of an Event of Default, to exercise multiple, non-exclusive remedies under the Insurance Agreement and other Transaction Documents].) Moreover, Morgan Stanley does not persuasively explain why a reasonably certain projection of FGIC's future damages could not, as a matter of law, be considered part of "the amounts, if any, then due" to FGIC under the Insurance Agreement or any other Transaction Document.
Morgan Stanley further contends that, in seeking all past and future claims payments, FGIC in effect seeks rescissory damages which are not available under controlling precedent. (Defs.' Memo. In Supp., at 8-10.) The First Department has held that where, as here, a monoline insurer has voluntarily given up the right to rescission by issuing an irrevocable policy, rescissory damages are unavailable as a matter of law. (MBIA Ins. Corp. v Countrywide Home Loans, Inc., 105 AD3d 412, 413 [1st Dept 2013] [MBIA], modifying 34 Misc 3d 895 [Sup Ct, NY County, Jan. 3, 2012, No. 602825/08, Bransten, J.] [MBIA trial court].) 
Although FGIC's complaint does not in terms request rescissory damages, this court notes that Courts considering requests by monoline insurers for damages, in the form of all claims paid and due in the future under irrevocable insurance policies, have concluded that such damages are in effect rescissory damages, even if not labeled as such. (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 2016 WL 7374210, * 15 [Sup Ct, NY County, Dec. 19, 2016, No. 653979/14] [this court's recent decision on a motion to dismiss RMBS monoline insurer's fraud claim, collecting authorities].)[FN5]

The unavailability of rescissory damages does not, however, resolve the more difficult issue—and one of critical importance in the RMBS litigation—of what compensatory damages will be available if the insurer prevails on its cause of action. Nor does it resolve the issue of whether the complaint nevertheless adequately pleads a claim for compensatory damages. 
In the RMBS monoline insurers' breach of contract litigation, the Appellate Division has recognized that recovery of claims payments may be had "without resort to rescission." (MBIA, 105 AD3d at 412.) In breach of contract cases generally, it has long been held that future damages are available upon appropriate proof. (See e.g. Village of Ilion v County of Herkimer, 23 NY3d 812, 818 [2014]; compare Ashland Mgt. Inc. v Janien, 82 NY2d 395, 405-406 [1993] [lost profits] with Kenford Co., Inc. v County of Erie, 67 NY2d 257, 261-262 [1986].)
The determination as to whether future claims payments may be recovered is not properly made on this motion addressed to the face of the pleadings, as it involves complex issues law and fact. The determination will require analysis, which the parties to this motion have not undertaken, of the provisions of the Transaction Documents under which FGIC seeks recovery of claims payments, as well as assessment of the sufficiency of the factual record that remains to be developed by FGIC in support of its claim for future damages.
Assured Guaranty Municipal Corp. v Flagstar Bank, FSB (2013 WL 1620567 [SD NY Apr. 15, 2013, No. 11 Civ 2375, Rakoff, J.] [Assured Guaranty/Flagstar]), on which Morgan Stanley relies, does not support its contention that future claims payments are not recoverable as a matter of law. That breach of contract action, brought by a monoline RMBS insurer, is particularly instructive, as it is one of the very few in the RMBS litigation to have been tried to verdict. In the cited post-trial decision, the Court awarded the insurer claims payments incurred after its initial post-trial decision, but declined to award future claims payments. The Court reasoned that the insurer's expert testimony on damages was not "sufficient to support a damages award for what remain undefined and speculative future claim amounts that [the insurer] might have to pay." (2013 WL 1620567, at * 1.) The Court did not hold in that decision, or in the initial post-trial decision (920 F Supp 2d 475 [SD NY 2013]), that claims for future claims payments are not cognizable at law. Nor does defendant cite other authority holding that, notwithstanding the unavailability of rescissory damages, future claims payments may not be recovered upon appropriate proof.
Morgan Stanley further contends that FGIC's claim for future damages must be dismissed as unduly speculative. More particularly, Morgan Stanley argues that FGIC's request to recover future damages must be dismissed because any projection or estimation of FGIC's potential future losses would be subject to adjustment and modification, and thus would be difficult, if not impossible, to determine with reasonable certainty. This contention is based on the pendency of litigation by the trustees demanding cure or repurchase of loans underlying non-performing securities, and on the claim that such litigation may restore money to the trusts, thus making estimation of FGIC's future damages uncertain. (Defs.' Memo. In Supp., at 11.)[FN6]
Again, [*5]determination of this issue requires resolution of complex issues of law and fact that are not appropriately determined on a motion addressed to the face of the pleadings.[FN7]

Sufficiency of Pleading of Breaches of Warranties
Morgan Stanley next moves to dismiss FGIC's first cause of action for breach of the Transaction Warranties and Underlying NIM Warranties, and second cause of action for breach of the Insurance Agreement, on the ground that FGIC fails to allege that any statement or representation concerning owner occupancy status or CLTV ratios, which Morgan Stanley made in the mortgage loan tapes and/or offering documents, was false or inaccurate. Specifically, Morgan Stanley argues that, when reporting the owner occupancy rates, it expressly disclosed that the rates were based on information that had been provided by the borrowers at the time of the loan's origination. Morgan Stanley also argues that, when reporting CLTV ratios, it expressly disclosed that these ratios were derived mathematically using previously obtained appraisals. Morgan Stanley also notes that it never warranted the accuracy or validity of either the owner occupancy information that was provided by the borrowers or the previously obtained appraisal values that were used in calculating the CLTV ratios. (Defs.' Memo. In Supp., at 12; Defs.' Reply Memo., at 8.) 
For the reasons stated, and on the authorities cited in this court's prior decisions of motions to dismiss RMBS actions involving substantially similar pleadings, the allegations of FGIC's complaint adequately state a cause of action for breach of representations and warranties based on alleged misrepresentations as to owner occupancy rates and CLTV ratios. (See e.g. Financial Guar. Ins. Co. v Credit Suisse Secs. (USA) LLC, 2015 NY Slip Op 31451[U], 2015 WL 4627744, * 8-9 [Sup Ct, NY County Aug. 3, 2015, No. 651178/13] [this court's prior decision in monoline insurer RMBS action, upholding breach of contract and fraud claims alleging misrepresentations as to LTV ratios based on inaccurate appraisals, where the complaint alleged that Automated Valuation Models had shown that sampled loans had a value materially lower than the appraised value, and thus pleaded facts calling into question the factual bases for the appraisals]; HSH Nordbank AG v Barclays Bank PLC, 42 Misc 3d 1231[A], 2014 NY Slip Op 50290[U], 2014 WL 841289, * 18-19 [Sup Ct, NY County Mar. 3, 2014, No. 652678/11] [same, and also holding, in RMBS investor fraud action, that alleged misrepresentations as to owner occupancy based on information reported by borrowers were actionable, where complaint also alleged that defendant securitizers knew of the falsity of loan representations or originators' abandonment or underwriting guidelines, as a result of their own due diligence]; Allstate Ins. Co. v Credit Suisse Secs. (USA) LLC, 42 Misc 3d 1220[A], 2014 NY Slip Op 50106[U], 2014 WL 432458, * 7-9 [Sup Ct, NY County Jan. 24, 2014, No. 650547/11] [same, collecting authorities].)
To the extent that Morgan Stanley also argues that FGIC's claims for breaches of warranties are not maintainable based on representations other than those involving owner occupancy status or CLTV ratios—e.g., representations relating to compliance with underwriting [*6]standards—this claim is rejected.[FN8]
(See e.g. Allstate Ins. Co., 2014 WL 432458, at * 10.)
Causation 
Finally, Morgan Stanley moves to dismiss FGIC's first, second, and third causes of action, on the ground that FGIC has not adequately pleaded that the alleged contractual breaches caused its losses. (Defs.' Memo. In Supp., at 15.) 
The parties agree that New York Insurance Law § 3106 is applicable to the pleading of causation in a monoline insurer's breach of contract action. (Defs.' Memo. In Supp., at 16; Pl.'s Memo. In Opp., at 21-25.)[FN9]
They disagree, however, as to the requirements of the statute. Morgan Stanley argues that section 3106 (b) requires the insurer to show that the breaches materially increased the risk of loss to FGIC, and that FGIC was damaged as a direct result. It further argues that the complaint inadequately pleads causation because it does not adequately tie the alleged misrepresentations as to owner occupancy and CLTV ratios to a material increase in the risk of loss and to "loss [FGIC] actually suffered." (Defs.' Memo. In Supp., at 17-18.) FGIC counters that section 3106 of the Insurance Law dispenses with any requirement that a plaintiff establish causation, and that "FGIC is not required to prove, much less plead, that the warranty breaches caused it to make claim payments." (Pl.'s Memo. In Opp., at 21-22.) On the other hand, FGIC apparently acknowledges that it must at least prove at trial that material misrepresentations increased its risk of loss. (Id., at 22, 23 n 19.) 
More particularly, in arguing the standards for pleading and proof of causation, FGIC contends that the Appellate Division held in MBIA (105 AD3d 412, supra) that "'pursuant to Insurance Law §§ 3105 and 3106, plaintiff was not required to establish causation in order to prevail on its fraud and breach of contract claims.'" (Pl.'s Memo. In Opp., at 22, quoting MBIA, 105 AD3d at 412 [emphasis FGIC's].) Notwithstanding this blanket assertion, FGIC recognizes that, as held by the MBIA trial court (34 Misc 3d at 902), wrongdoing causing loss is required in order to support an award of damages. (Pl.'s Memo. In Opp., at 22.) FGIC contends, however, that the point at which causation occurs has been a subject of dispute in the RMBS litigation, and that in MBIA, the defendant securitizer argued that claims payments must be shown to have been directly and proximately caused by the alleged misrepresentation, while the insurer argued that causation occurred when the securitizer made the misrepresentations that induced the [*7]issuance of the policy. (Pl.'s Memo. In Opp., at 23, n 18.) 
The MBIA Court's holding on causation was addressed by this court's recent decision in Ambac/Countrywide (2016 N.Y. Slip Op. 32482(U), supra), to which the parties are referred for a fuller discussion. In brief, the Appellate Division affirmed the trial court's holding on causation, which the Court characterized as concluding that "pursuant to Insurance Law §§ 3105 and 3106, plaintiff was not required to establish causation in order to prevail on its fraud and breach of contract claims." (MBIA, 105 AD3d at 412.) The Court did not set forth the basis for this affirmance or discuss the standards for proof of causation of damages in a fraud or breach of warranty claim. As review of the MBIA trial court decision shows, and as the MBIA trial court itself subsequently confirmed, however, the trial court held that although proximate causation was not necessary to demonstrate the defendant securitizer's liability, the insurer's "damages can only be calculated by reference to claims payments made because of the breach of the R & Ws (representations and warranties)," and the insurer must "prove that it was damaged as a direct result of the material misrepresentation." (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 2015 WL 6471943, * 8-9 [Sup Ct, NY County Oct. 22, 2015, No. 651612/10, Bransten, J.] [discussing the court's earlier MBIA trial court decision]; MBIA trial court decision, 34 Misc 3d at 906].) 
Although this court's Ambac/Countrywide decision (2016 WL 7374210, at * 17) discussed the MBIA holding as it related to the insurer's fraudulent inducement claim, the MBIA trial court (34 Misc 3d at 906) expressly applied the above reasoning on causation not only to MBIA's fraudulent inducement claim but also to a claim pleaded there by MBIA for breach of warranties in the parties' insurance agreement. Moreover, the Appellate Division's affirmance of the trial court's causation holding in MBIA did not distinguish between the fraudulent inducement and breach of warranty causes of action.
In RMBS monoline insurers' actions for both fraud and breach of warranty, the standards for pleading and proof of causation have been the subject of considerable confusion—not surprisingly, given the challenge faced by the parties and the Courts in applying traditional causation principles to the novel financial transactions at issue in the litigation. 
As discussed immediately above, the MBIA trial court distinguished between the standards for pleading and proof of liability and the standards for pleading and proof of damages. Similarly, in Assured Guaranty/Flagstar, the federal Court was called upon to construe a repurchase protocol, typical of those found in RMBS Transaction Documents, which required the defendant securitizer to cure or repurchase loans where the securitizer became aware of a breach of a contractual representation and warranty that "materially and adversely affects the interest of the Issuer, the Noteholders or the Note Insurer in the related Mortgage Loan." (920 F Supp 2d at 508-509.) Applying New York law, the Court first construed the term "material and adverse," holding that the term "means that plaintiff must only show that Flagstar's breaches of the representations and warranties materially increased its risk of loss." (Id., at 509 [internal quotation marks and brackets omitted].)[FN10]
In the damages portion of the decision, the Court [*8]cited authority that causation is an essential element of damages in a breach of contract action. (Id., at 515.) The Court made an express finding that Assured, the insurer, "showed through [its expert's] damages model [] that Flagstar's failure to repurchase those defaulted loans that had breached the representations and warranties directly and proximately caused Assured to improperly bear the burden of paying claims on the transactions." (Id.) Other Courts have also expressly applied the proximate cause standard to RMBS insurers' breach of warranty claims. (E.g. Assured Guar. Mun. Corp. v DB Structured Prods., Inc., 2014 WL 3282310, * 3 [Sup Ct, NY County July 3, 2014, No. 650705/10, Kornreich, J.]; Assured Guar. Mun. Corp. v DLJ Mtge. Capital, Inc., 2014 WL 3288335, * 11 [Sup Ct, NY County, July 3, 2014, No. 652837/11, Kornreich, J.] [breach of warranty and fraud].) This court is unaware of any authority that dispenses with this standard for pleading and proof of damages in the context of RMBS breach of contract claims.
On this motion to dismiss, however, the court need not and cannot properly address the precise proof that must be adduced in applying the causation standard. As indicated above, the parties have not undertaken a detailed analysis of the contractual provisions under which damages may or may not be recoverable, and have not discussed the extent to which the categories of potentially available damages differ under the various provisions. Moreover, FGIC was not required to specify, and has not specified, the basis for its calculation of damages or, put [*9]another way, the type of evidence, expert or other, that it will seek to introduce in order to prove its damages. Assured Guaranty/Flagstar (920 F Supp2d 475, supra) illustrates the necessity for a fully developed record, including expert evidence, in determining whether sufficient proof of causation of damages is adduced. 
At the pleading stage, in a breach of contract action, like a fraud action, it is not necessary for the plaintiff to plead the precise measure of damages, so long as facts are alleged from which damages attributable to the defendant's breach may reasonably be inferred. (See e.g. CAE Indus. Ltd. v KPMG Peat Marwick, 193 AD2d 470, 472-473 [1st Dept 1993]; Harmit Realties LLC v 835 Ave. of the Ams., 128 AD3d 460, 461 [1st Dept 2015]; 36 NY Jur 2d Damages § 207; see also Ambac/Countrywide 2016 WL 7374210, at * 15 [this court's decision holding that RMBS monoline insurer's fraudulent inducement claim also need only plead facts from which damages may properly be inferred]; see also MBIA Ins. Corp. v Morgan Stanley, 2011 WL 11556446, * 8 [Sup Ct, Westchester County May 26, 2011, No. 29951/10, Loehr, J.] [same].) 
Here, affording the complaint the benefit of all reasonable inferences, as the court must do on a motion to dismiss, the court finds that the first two causes of action of the complaint plead damages attributable to FGIC's breaches of warranties. The complaint alleges not only that Morgan Stanley's "breaches [of warranties] materially and adversely affected FGIC's risk of loss as the insurer of the Transaction" (Compl., ¶¶ 14, 246), but also that, as a result of the breaches, FGIC has incurred harm including claims payments it has made or will be liable to make in the future. (Id., ¶¶ 16, 247, 252.) The branch of Morgan Stanley's motion to dismiss FGIC's first and second causes of action for breach of warranty will accordingly be denied.
Finally, the third cause of action pleads that Morgan Stanley breached Insurance Agreement § 2.02 (e) by failing to provide written notice to FGIC of the occurrence of any default or event of default in the Underlying Securitizations. (Compl., ¶ 254.) In moving to dismiss this cause of action, Morgan Stanley does not dispute that a properly pleaded independent failure to notify claim is maintainable. Rather, it asserts that the complaint fails to plead causation or to explain how FGIC was harmed by the alleged failure to notify. On the cursory treatment of this branch of the motion to dismiss (see Defs.' Memo. In Sup., at 19), the court declines to dismiss this cause of action.
It is accordingly hereby ORDERED that the motion of defendants Morgan Stanley ABS Capital I Inc. and Morgan Stanley Mortgage Capital Holdings LLC, as successor to Morgan Stanley Mortgage Capital Inc., to dismiss the complaint is denied.
This constitutes the decision and order of the court.
Dated: January 19, 2017
New York, New York
________________________
MARCY FRIEDMAN, J.S.C.



Footnotes

Footnote 1:Each of the 48 Underlying NIM Securities included in the NIM Securitization Transaction represents "a right to receive prepayment charges and/or excess cashflow after payment of fees and expenses of the issuer and distributions to the related senior classes of certificates." (Compl., ¶¶ 2, 53.) As described by Morgan Stanley, "[a] typical residential mortgage-backed securitization is designed to generate cash flows beyond what is distributed to holders of its publicly issued securities." (Defs.' Memo. In Supp., at 3, citing Compl., ¶ 2.) These extra cash flows, along with certain other possible payments, are often packaged and offered as NIM securities through a private placement transaction. (Id.) According to Morgan Stanley, because these excess cash flows are "the first to suffer losses and the last to be paid out," NIM securities are considered some of the riskiest or "very bottom of the payment structure of a mortgage-backed securitization." (See id., at 4.)


Footnote 2:In Insurance Agreement § 2.01 (l), MSAC and MSMC each represented and warranted in pertinent part: "Each of the representations and warranties made by it in the Transaction Documents (other than this Insurance Agreement) to which it is a party is true and correct in all material respects and it makes each such representation and warranty to, and for the benefit of, the Class-N-1 Insurer as if the same were set forth in full herein."

Footnote 3:By Order of the Administrative Judge, dated May 23, 2013, this court was designated to hear "all actions hereafter brought in this court alleging misrepresentation or other wrong in connection with or arising out of the creation or sale of residential mortgage-backed securities." The court will generally rely on the reasoning of, and authorities cited in, its prior decisions, where the motion raises issues that have previously been decided on substantially similar pleadings.

Footnote 4:Insurance Agreement § 5.01 (a) provides that Events of Default include: "Any representation or warranty made by any party hereto (other than the Class N-1 Note Insurer) under this Insurance Agreement or any such partyunder [sic] any other Transaction Document . . . [which] shall prove to be untrue or incorrect in any material respect." Transaction Documents, as defined in Insurance Agreement § 1.01, include the agreements by which this Transaction was effectuated, discussed above (supra at 2-3).


Footnote 5:In Financial Guar. Ins. Co. v Credit Suisse Secs. (USA) LLC (2015 NY Slip Op 31451[U], 2015 WL 4627744, * 9 [Sup Ct, NY County Aug. 3, 2015, No. 651178/13] and Ambac Assur. Corp. v Nomura Credit & Capital, Inc. (2015 NY Slip Op 30930[U], 2015 WL 3490753, * 8 [Sup Ct, NY County June 2, 2015, No. 651359/13]), the plaintiff monoline insurers requested monetary relief sufficient to place them in the position they would be in had they not entered into the Insurance Agreements, including all past and future claims payments. Although the insurers did not expressly request rescission or rescissory damages, this court held that the requests in effect sought rescissory damages, which are unavailable under MBIA (105 AD3d 412, supra). In the motions to dismiss these cases, the parties did not argue, and the court did not determine, whether future compensatory damages were available.

Footnote 6:Morgan Stanley develops this argument as follows: Any shortfalls on the Class N-1 Notes are subject to the uncertainty of shortfalls in the Underlying Securitizations. In a number of the Underlying Securitizations, the trustees have commenced their own litigation demanding cure or repurchase of non-performing securities. Such litigation "may well infuse money back into the securitizations, thus restoring cashflows that are now absent" and reducing potential future losses on the Class N-1 Notes insured by FGIC. (Defs.' Memo. In Supp., at 11.) The estimation of the shortfalls on the Notes, and of FGIC's "ultimate liability" for claims payments, is thus uncertain as a result of the trustee litigation. (Id.) 


Footnote 7:At the oral argument of this motion, Morgan Stanley also appeared to argue that FGIC cannot recover future damages in this action because it has the ability to avoid future claims payments by demanding repurchase of defective loans. (Oral Argument Transcript, at 18-19.) The extent to which relief under the repurchase protocol would reduce or avoid FGIC's damages cannot be determined on this factually undeveloped record.


Footnote 8:This argument is made for the first time on the reply—albeit, in response to FGIC's claim, in opposition to the motion to dismiss, that the complaint also pleads such other representations. (See FGIC's Memo. in Opp., at16-17; Defs' Reply Memo. at 9-11.) 


Footnote 9:Section 3106 (a) of this statute provides in pertinent part: 
"In this section 'warranty' means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer's liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract."
Section 3106 (b) provides in pertinent part:
"A breach of warranty shall not avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract."

Footnote 10:In its post-trial decision, the Court relied on the reasoning in its summary judgment decision, which considered the requirements of Insurance Law § 3106 in construing the term "material and adverse." (See Assured Guar. Mun. Corp. v Flagstar Bank, FSB, 920 F Supp 2d at 509, citing its summary judgment decision at 892 F Supp 2d 596, 602 [SD NY 2012].) The earlier decision, in turn, cited similar reasoning in Syncora Guarantee Inc. v EMC Mortgage Corp. (874 F Supp 2d 328, 334-339 [SD NY 2012, Crotty, J.]). The Appellate Division decision in MBIA cited these two federal decisions in support of its holding that "the motion court was not required to ignore the insurer/insured nature of the relationship between the parties to the contract in favor of an across the board application of common law (see Insurance Law §§ 3105, 3106)." (105 AD3d at 412.) 
As discussed in Ambac/Countrywide, however, although the New York appellate courts have authorized fraud claims pursuant to or "informed by" Insurance Law § 3105, they have not held that the common law elements of fraud claims need not be pleaded or proved in connection with fraudulent inducement claims in the RMBS litigation. (Ambac/Countrywide, 2016 WL 7374210, at * 5, n 6; see also Financial Guar. Ins. Co. v Putnam Advisory Co., LLC., 783 F3d 395, 402 [2d Cir 2015] [holding that insurer of CDO transaction adequately pleaded loss causation element of common law fraudulent inducement claim, and declining to reach issue of whether Insurance Law § 3105 dispensed with loss causation requirement].) Nor have the New York appellate courts held that Insurance Law § 3106 dispenses with the common law causation element of RMBS breach of warranty claims. As discussed in Ambac/Countrywide in the context of fraud claims, and equally applicable to breach of warranty claims, elimination of the common law elements would have wide-ranging implications for the RMBS litigation and beyond. Determination as to the effect of the Insurance Law sections on the standards for pleading and proof of claims in the RMBS litigation should not be made without consideration of the legislative history of the statute. Nor should such determination be made without comprehensive briefing on the application of the statute not merely to consumer insurance transactions, or even to complex commercial insurance transactions generally, but also specifically to financial guaranty insurance for the complex, novel securities at issue.