20-3808-cv
*St. Christopher's, Inc. v. JMF Acquisitions, LLC*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of December, two thousand twenty-one.

PRESENT:
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> *Circuit Judges.*

---

St. Christopher's, Inc.,

> *Plaintiff-Counter-Defendant-Appellee,*

v.                                                                  20-3808-cv

JMF Acquisitions, LLC,

> *Defendant-Counter-Claimant-Appellant,*

Joseph M. Forgione,

> *Defendant-Counter-Claimant,*

JMF Properties, LLC,

> *Defendant.*

---

FOR PLAINTIFF-COUNTER-                     M. WILLIAM SCHERER, Wilk Auslander
DEFENDANT-APPELLEE:                        LLP, New York, NY.

FOR DEFENDANT-COUNTER-
CLAIMANT-APPELLANT:

JAY J. RICE (Bruce H. Nagel, *on the brief*),
Nagel Rice LLP, Roseland, NJ.

Appeal from the final judgment of the United States District Court for the Southern District of New York (Seibel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED in part** and **REVERSED** and **REMANDED in part**.

Defendant-Counter-Claimant-Appellant JMF Acquisitions, LLC ("JMF") appeals from the October 13, 2020 final judgment of the United States District Court for the Southern District of New York (Seibel, *J.*), which dismissed with prejudice JMF's amended counterclaims (the "counterclaims") against Plaintiff-Counter-Defendant-Appellee St. Christopher's, Inc. ("St. Christopher's"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision.

## BACKGROUND

According to JMF's counterclaims, St. Christopher's, which is a residential facility for people with autism, executed a contract with JMF, a real estate developer, to sell JMF approximately twenty-two acres of land to develop into "not less than thirty[-]five" residential units. Joint App'x at 394. After additional negotiations and an amendment to the contract, JMF paid St. Christopher's a deposit and moved forward with the project.

Subsequently, the parties began what became a years-long dispute regarding the size of the development. The counterclaims allege that, in multiple communications to JMF, St.

Christopher's urged JMF to withdraw from the project.   When JMF did not do so, St. Christopher's threatened to contact the media and local government and to file a lawsuit regarding what it alleged was improper conduct on the part of JMF.   St. Christopher's allegedly followed through on all of these threats.

For its part, St. Christopher's alleged in the instant litigation that, because the contract and its subsequent amendment were fraudulently induced, St. Christopher's was entitled to a declaratory judgment that the contract and its amendment were either never formed or unenforceable.   In its pleadings, St. Christopher's emphasized that it was "not asking for rescission of the Contract (although that is the necessary consequence of a determination that there was not meeting of the minds) or the Amendment (or of any aspect of the transaction)" and expressed a willingness to do "whatever, if anything, the Court determines it must do" because it "does not want to invite a counterclaim for anticipatory repudiation."   Joint App'x at 116.

While the instant litigation was pending, St. Christopher's sent JMF a letter, dated March 9, 2018, to "exercise[] its right to terminate the Contract and does so terminate" due to JMF's failure to secure the necessary government approvals by the deadline specified in the contract.   Joint App'x at 360.   Subsequently, on April 25, 2018, the parties filed a stipulation in which St. Christopher's voluntarily dismissed five of the six claims in its third amended complaint.

Shortly thereafter, on June 22, 2018, JMF filed the counterclaims against St. Christopher's, which, as amended, included one counterclaim for anticipatory repudiation and two counterclaims for breach of contract.   JMF sought specific performance, or alternatively, the return of its deposits for St. Christopher's alleged anticipatory repudiation and contractual breaches.   St. Christopher's

3

then moved to dismiss JMF's counterclaims, which the district court granted. This appeal followed.

## DISCUSSION

### I. Standard of Review

"We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6) . . . , accepting as true the factual allegations in the complaint and drawing all inferences in the [nonmoving party's] favor." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015). To survive a motion to dismiss, the pleadings "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### II. Anticipatory Repudiation Counterclaim (Claim One)

JMF asserts that the district court erred when it resolved purportedly disputed facts in dismissing JMF's anticipatory repudiation counterclaim. We disagree. Although anticipatory repudiation claims generally raise issues of fact that must be reserved for the jury, *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010), JMF did not plead sufficient facts to support a plausible claim for anticipatory repudiation. More specifically, as set forth below, because JMF failed to plausibly allege that St. Christopher's conveyed an intent not to perform its contractual obligations, the district court correctly concluded that JMF's anticipatory repudiation counterclaim must be dismissed.

4

Under New York law, "[a]nticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Anticipatory repudiation has taken place if there has been "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach or a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 463 (1998) (internal quotation marks omitted). To prevail on a claim for anticipatory repudiation, the obligee must prove that the obligor made "an overt communication of intention not to perform" to the obligee that is both "positive and unequivocal." *Tenavision, Inc. v. Neuman*, 45 N.Y.2d 145, 150 (1978) (internal quotation marks omitted).

In an effort to plausibly plead that St. Christopher's conveyed a "positive and unequivocal" intent not to perform, JMF recounts how St. Christopher's urged JMF to abandon the project on several occasions, communicated to JMF that it had an alternative deal "in mind," and followed through on threats to contact local government officials and the media. Joint App'x at 398–400. However, none of these alleged communications reflect a positive and unequivocal intent by St. Christopher's to abandon its contractual obligations. *See, e.g.*, *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 921 N.Y.S.2d 260, 264 (2d Dep't 2011). In the absence of such an allegation, JMF's speculation that St. Christopher's would eventually abandon the contract cannot support a plausible claim for anticipatory repudiation.

Similarly, to the extent JMF argues that St. Christopher's filing a declaratory judgment action constituted an anticipatory repudiation, we disagree. In *Princes Point LLC v. Muss Dev.*

5

*L.L.C.,* the New York Court of Appeals rejected this precise argument, explaining that "the mere act of asking for judicial approval to avoid a performance obligation is not the same as establishing that one will not perform that obligation absent such approval." 30 N.Y.3d 127, 134 (2017). Here, consistent with *Princes Point*, St. Christopher's made abundantly clear in its pleadings that it was only seeking a judicial determination regarding its obligation to perform under the contract and was not unwilling to ultimately perform under the contract if the lawsuit were unsuccessful. *See* Joint App'x at 116 ("At this time, St. Christopher's is not asking for rescission of the Contract. . . . St. Christopher's does not want to invite a counterclaim for anticipatory repudiation. St. Christopher's will do whatever, if anything, the Court determines it must do.").

JMF seeks to distinguish *Princes Point* by asserting that St. Christopher's sought to invalidate the entirety of the contract in this lawsuit, rather than only certain provisions like the party in *Princes Point*. The analysis in *Princes Point*, however, did not rely upon such factual distinctions regarding the scope of the requested relief relating to the contract. Instead, as here, where St. Christopher's "ask[ed] for judicial approval to avoid a performance obligation," *Princes Point*, 30 N.Y.3d at 134, the district court correctly held that mere initiation of the instant lawsuit did not constitute an anticipatory repudiation of the contract.

In sum, JMF's allegations in the anticipatory repudiation counterclaim—including St. Christopher's filing of the instant lawsuit, as well as the related statements and conduct by St. Christopher's surrounding the lawsuit—do not plausibly allege a "positive and unequivocal" intent by St. Christopher's not to perform its contractual obligations if the lawsuit were ultimately unsuccessful. *Tenavision*, 45 N.Y.2d at 150. Accordingly, the district court correctly dismissed JMF's counterclaim for anticipatory repudiation.

6

### III.  Breach of Contract Counterclaims

JMF also brings two breach of contract counterclaims, which we address in turn.

#### i.  Counterclaim Two

JMF has brought a breach of contract counterclaim based upon its assertion that the filing of this lawsuit was a breach because, in the event of a default by JMF, St. Christopher's "sole remedy" under Section 8.2 of the contract was to retain JMF's deposit and interest as liquidated damages.   Joint App'x at 407.   In other words, JMF argues that, in bringing this lawsuit and failing to pursue the proper contractual remedy for JMF's alleged breach, St. Christopher's itself committed breach of contract.

This counterclaim, however, suffers from a fatal flaw—St. Christopher's declaratory judgment action did not accuse JMF of defaulting on the contract, or otherwise refusing to perform under the contract.   Instead, St. Christopher's consistently alleged that its contract with JMF was either nonexistent or unenforceable.   Therefore, because St. Christopher's pleadings do not allege that JMF defaulted on the contract, JMF has not plausibly alleged that St. Christopher's breached the contract in selecting an improper remedy under the contract's default provision.   Accordingly, the district court properly dismissed JMF's breach of contract counterclaim under this theory.

#### ii.  Counterclaim Three

JMF's final breach of contract counterclaim asserts that St. Christopher's breached its implied contractual duty to act in good faith and conduct fair dealings.   Specifically, JMF alleges that the combination of St. Christopher's threats to JMF, communications to the media and local government, and filing of the instant declaratory judgment action impeded JMF's ability to perform its own contractual obligations to obtain the requisite government approvals for the project.

7

The district court dismissed this counterclaim because St. Christopher's terminated the contract under Section 9.1(b)—which provides St. Christopher's with the option to terminate the contract if JMF failed to obtain the necessary government approvals by March 4, 2018—and JMF failed to allege that the termination was precluded by the prevention doctrine. We disagree. The prevention doctrine excuses the non-occurrence of a condition precedent if the party seeking to invoke that condition "was instrumental in preventing or frustrating its occurrence." *Merzon v. Lefkowitz*, 735 N.Y.S.2d 106, 107 (1st Dep't 2001). Here, application of the doctrine would prevent St. Christopher's from relying on JMF's failure to obtain the requisite government approvals to terminate the contract. *See, e.g.*, *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 CV. 0432, 2009 WL 3124219, at *4 (S.D.N.Y. Sept. 29, 2009). To invoke this doctrine at this stage of the proceeding, JMF need only allege that St. Christopher's materially hindered JMF's ability to obtain the requisite government approvals in a timely manner. *See Farrell Heating, Plumbing, Air Conditioning Contractors, Inc. v. Facilities Dev. and Improvement Corp.*, 414 N.Y.S.2d 767, 770 (3d Dep't 1979) (a party who "greatly disrupts and frustrates" the other's performance breaches the underlying agreement); 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 39.3 (4th ed. 2000 & 2009 Supp.) ("[I]f one party to a contract hinders, prevents, or makes impossible performance by the other party, the latter's failure to perform will be excused."). JMF has done so here: the allegations support an inference that St. Christopher's materially "frustrated" JMF's ability to obtain the government approvals in a timely manner. As a result, if these allegations are proven, St. Christopher's was precluded from terminating the contract on the basis that JMF failed to obtain the requisite government approvals.

Moreover, those same allegations state a plausible claim that St. Christopher's breached its

implied covenant of good faith and fair dealing by taking "numerous actions evidencing its bad faith and failure to cooperate" with the applications for government approvals for the project that JMF was required to obtain under the contract. Joint App'x at 408. For example, JMF alleges that St. Christopher's, among other things: (1) "[s]ent a letter to the town Supervisor stating that litigation was likely between St. Christopher's and JMF and that the town would be in the middle and intending to interfere with the Project, create obstacles for JMF to obtain approvals, and cause the town to not approve development"; (2) communicated with the press; and (3) "wrongfully instituted this action to impede, hinder and/or prevent JMF from fulfilling its contractual obligations and/or developing the Project." Joint App'x at 409–10.

The district court held that the counterclaim could not survive a motion to dismiss because JMF failed to plead sufficient facts to establish causation—an essential element to recover damages in a breach of contract action—because "JMF has not alleged a single fact regarding the steps it took to obtain government approvals or how [St. Christopher's] actions frustrated those efforts." Special App'x at 19. However, JMF's counterclaim need only raise an inference of causation attributable to St. Christopher's breach at the pleading stage. *See CAE Indus. Ltd. v. KPMG Peat Marwick*, 597 N.Y.S.2d 402, 404 (1st Dep't 1993) ("[T]o defeat the defendant's motion to dismiss . . . [i]t was sufficient that the complaint contained allegations from which damages attributable to the defendant's breach might be reasonably inferred."). As described above, JMF has described actions by St. Christopher's sufficiently significant to permit a plausible inference that such acts would make it difficult for JMF to obtain approval, and, contrary to St. Christopher's contention, has pled that it was "[a]t all times . . . engaged in" efforts "to fulfill its contractual obligations," Joint App'x at 404—an allegation that is supported by evidence in the record that it had submitted

9

proposals to the town, *id.* at 86. In other words, drawing all reasonable inferences in JMF's favor, the counterclaim plausibly alleges that bad faith interference by St. Christopher's in the government approval process was sufficiently extensive to support an inference that JMF's damages were attributable to St. Christopher's breach. Accordingly, we conclude that the district court erred in its dismissal of JMF's third counterclaim for breach of the contract's implied covenant of good faith and fair dealing.

## IV.   Dismissal with Prejudice

Finally, JMF contests the district court's dismissal of its amended counterclaims with prejudice and denial of leave to file second amended counterclaims. "We review the denial of leave to amend a complaint for abuse of discretion, unless the denial was based on an interpretation of law, in which case the legal conclusion is reviewed *de novo*." *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010). Here, the district court found not only that JMF failed to adduce any additional facts in its proposed second amended counterclaims that would cure its pleading deficiencies, but also that the pleading deficiencies were so substantive they would have been impossible for JMF to cure "by better pleading." Special App'x at 22–23.

On appeal, JMF argues in a conclusory fashion that "no additional factual allegations are needed," but "if leave had been granted[,] it could have added those allegations to an amended pleading." Appellant's Br. at 59–60. JMF never explains, however, what "those [additional] allegations" would be. Therefore, it is entirely unclear how JMF could cure the pleading defects identified in the anticipatory repudiation counterclaim, as well as the breach of contract counterclaim alleging that the filing of the lawsuit was an improper remedy under the contract. Though leave to amend is to be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it

10

was not an abuse of discretion for the district court to deny leave to JMF when JMF "did not advise the district court how the complaint's defects would be cured." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006).

*          *          *

We have reviewed JMF's remaining arguments and find them to be without merit. Accordingly, we **REVERSE** and **REMAND** on JMF's counterclaim for breach of contract based on the implied covenant of good faith and fair dealing, and **AFFIRM** the district court's judgment on all other counterclaims.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11